**IN THE UNITED STATES DISTRICT COURT**
**IN AND FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ELAINE HALE, Individually and as | ) | |
| Administratrix of the Estate of Derek J. Hale | ) | |
| DENNIS W. HALE, and CONNIE M. HALE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 07-166 *** |
| | ) | |
| Lieutenant WILLIAM BROWNE; Sgt. ANGEL | ) | |
| ALVERIO, Cpl. ROBERT CUNNINGHAM, | ) | |
| Cpl.  CHARLES EMORY, JR., Cpl. MITCHELL | ) | |
| RENTZ, Cpl. JEFFREY SILVERS, Cpl. GEORGE | ) | |
| TAYLOR, Cpl. JOSEPH LEARY, | ) | |
| Cpl. RANDOLPH PFAFF, Cpl. DANNY SILVA, | ) | |
| Chief MICHAEL J. SZCZERBA, | ) | |
| in his official capacity; CITY OF | ) | |
| WILMINGTON, a municipal corporation; | ) | |
| Lieutenant PATRICK OGDEN; Sergeant | ) | |
| DARREN LESTER; Sergeant RANDALL HUNT; | ) | |
| Sergeant ALBERT PARTON; Detective VINCENT | ) | |
| CLEMONS; Detective DAVID CHORLTON; | ) | |
| Captain CHARLES J. SIMPSON; Major ALBERT | ) | |
| HOMIAK; Major JOSEPH PAPILI; Colonel | ) | |
| THOMAS F. MacLEISH, individually and in his | ) | |
| official capacity; DIVISION OF STATE POLICE, | ) | |
| DEPARTMENT OF SAFETY AND HOMELAND | ) | |
| SECURITY, STATE OF DELAWARE; | ) | |
| | ) | |
| Defendants | ) | |

**ANSWER OF PATRICK OGDEN, DARREN LESTER, RANDALL HUNT, ALBERT PARTON, VINCENT CLEMONS, DAVID CHORLTON, CHARLES J. SIMPSON, ALBERT HOMIAK, JOSEPH PAPILI, THOMAS F. MACLEISH, AND THE DELAWARE STATE POLICE TO THE FIRST AMENDED COMPLAINT**

1.      The averment violates Rule 8(a)(2), which requires that pleadings set forth "a short and plain statement of the claim", Rule 8(e)(1), which requires that "[e]ach averment of a pleading shall be simple, concise, and direct", and Rule 10(b), which requires paragraphs limited to a statement of a single set of circumstances.  Without prejudice to this objection, admitted only that the plaintiffs have filed a civil action seeking damages, and that Derek Hale, a suspect in a major drug and organized crime investigation, was shot and killed by police officers attempting to apprehend him.  The other allegations are denied.

2.      The averment violates Rule 8(a)(2), which requires that pleadings set forth "a short and plain statement of the claim", Rule 8(e)(1), which requires that "[e]ach averment of a pleading shall be simple, concise, and direct", and Rule 10(b), which requires paragraphs limited to a statement of a single set of circumstances.  Without prejudice to this objection, the allegations are denied, except that the attempted arrest of Hale took place during daylight hours.

3.      Denied.

4.      The allegation of violations of Delaware State Police rules and regulations is denied.  The answering defendants are without knowledge as to Wilmington Police Department rules or regulations.

5.      Denied as alleged.  Admitted only that this Court has subject matter jurisdiction over the claims asserted.

6.      The answering defendants are without knowledge as to the filing of any notices with the City of Wilmington.  The balance of the averment is denied.

7.      Admitted, by information and belief.

8.      The answering defendants are without sufficient information or knowledge to respond.

9.       The answering defendants are without sufficient information or knowledge to respond.

10.      Denied as alleged.  Admitted only that Lt. Brown shot and killed the decedent. The answering defendants are without any knowledge as to the balance of the allegations, and they are denied.

11.      Admitted, by information and belief.

12.      Admitted, by information and belief.

13.      Admitted, by information and belief.

14.      Admitted, by information and belief.

15.      Admitted, by information and belief.

16.    Admitted, by information and belief.

17.    Admitted, by information and belief.

18.    Admitted, by information and belief.

19.    Admitted, by information and belief.

20.    Admitted, by information and belief.

21.    Denied as alleged.  Admitted only that Chief Szczerba has been sued.  The balance of the averment is denied.

22.    Admitted.

23.    Admitted, except that at the time of the drug investigation giving rise to the Complaint, Lt. Ogden was a sixteen-year veteran.  Liability is denied.

24.    Denied.  By way of further answer, Sgt. Lester was on sick leave due to a work-related injury and did not participate in the drug and organized crime investigation giving rise to the plaintiffs' lawsuit.

25.    Liability is denied.  Balance admitted.

26.    Denied as alleged.  Admitted only that Sgt. Parton was the NCOIC of SORT at the time of the drug investigation giving rise to plaintiffs' claims.  The SORT team frequently participates in major drug arrests.  Denied that the SORT team was involved in any way in the attempted arrest of Hale on November 6, 2006.  Further denied that any of the officers present on the scene were under the command of Sgt. Parton.  Liability is denied.

27.    Denied as alleged.  Admitted only that Detective Clemons was a member of the DSP SIU at the time of the drug investigation giving rise to these claims.  Denied that he participated in the attempted apprehension of the decedent.  Liability is denied.

28.    Denied as alleged.  Admitted only that Detective Chorlton was a member of the DSP SIU at the time of the drug investigation giving rise to these claims.  Denied that he participated in the attempted apprehension of the decedent.  Liability is denied.

29.     Denied.  By way of further answer, Captain Simpson had been transferred by DSP, and played no role in the drug investigation from which plaintiffs' claims arise.

30.     Denied as alleged.  Admitted only that Major Homiak had responsibility for SIU at the time of the drug investigation from which the plaintiffs' claims arise.  The balance of the averment is denied.

31.     Denied as alleged.  Beginning in 2005, the Delaware State Police undertook an investigation into drug and weapon distribution and organized crime activities that culminated in the indictment of 32 individuals on a total of 160 counts.  Hale was an unindicted co-conspirator in the drug and organized crime conspiracy.  Hale and many of those indicted were members of the Pagan motorcycle club.  The investigation was monitored through the chain of command at DSP, and the electronic surveillance of the suspects, including Hale, was supervised by the Department of Justice and the Superior Court of the State of Delaware.

32.     Denied as alleged.  Admitted only that Major Papili had administrative responsibility for the SORT team at the time of the attempted apprehension of the decedent.  Denied that the SORT team was involved in the attempted apprehension of Hale.  The balance of the averment is denied.

33.     Denied as alleged.  Admitted only that Colonel MacLeish bore ultimate responsibility for the operations of DSP, including the drug and organized crime investigation giving rise to the claims asserted.  The balance of the averment is denied.

34.     The first sentence is admitted.  Defendants are without knowledge as to the plaintiffs' motives in naming DSP as a defendant in their lawsuit.  The balance of the averment is denied.

35.     The allegations of Constitutional violations and deprivations are denied.  The balance of the averment calls for a legal conclusion, and is therefore denied.

36.     Denied as alleged.  The place and date of birth and parents' names are admitted.  Answering defendants are without knowledge as to Hale's service record.

37.    Admitted, by information and belief.

38.    Denied as alleged.  Admitted only that Hale was a member of the northern Virginia chapter of the Pagan Motorcycle Club.  Further admitted that some Pagans have a military background.  The answering defendants are without knowledge or information as to Hale's motivation, other than profit from illegal drug distribution, for joining the Pagans.

39.    Decedent's age at the time of his death and his Virginia address are admitted. Answering defendants are without knowledge as to Hale's actual residence and living arrangements at the time of his death.

40.    Denied as alleged.  Admitted only that Hale was a member of the Pagan Motorcycle Club affiliate in northern Virginia.  Further admitted that Hale established contacts with Pagans in Delaware for the purpose of dealing in illegal narcotic drugs and in weapons. Hale was identified as an unindicted co-conspirator in an Indictment returned by the New Castle County Grand Jury naming a total of thirty-two defendants in a drug racketeering operation that was investigated by the Delaware State Police.  The balance of the averment is denied.

41.    Denied as alleged  In 2005, the DSP SIU began to investigate ongoing drug transactions involving members of the Pagan Motorcycle Club in Delaware.  This undercover investigation was justified by the considerable quantities of illegal drugs, weapons, and cash involved.

42.    Denied as alleged.  The purpose of the undercover investigation was to identify, arrest, prosecute, and incarcerate individuals involved in a conspiracy to distribute large quantities or illegal controlled substances in Delaware.  The allegations as to the media are false.

43.    Denied.

44.    Denied as alleged.  Part of the investigation involved an inquiry into the backgrounds of various suspects through law enforcement channels and sources.  The focus of the investigation was on the activities of various individuals involved in the distribution of controlled substances.

45.     Denied as alleged.  Investigation revealed that Hale was acting as a courier for drugs and money between the Delaware Pagans and the northern Virginia Pagans.

46.     Denied.  By way of further answer, the investigation revealed Hale's involvement in the drug and organized crime conspiracy, as set forth in the Indictment listing him as an unindicted co-conspirator.

47.     Denied as to Colonel MacLeish, Major Homiak, Major Papili, and Captain Simpson.  Lt. Ogden and Sgt. Hunt had personal knowledge as well as information from other law enforcement sources regarding the evidence establishing Hale's culpability.

48.     Denied as alleged.  The defendants had knowledge of the facts set forth above, as well as other evidence implicating Hale in the drug conspiracy, that furnished probable cause for the arrest of Hale.

49.     Denied as alleged.  Admitted by information and belief that some members of the Pagan club participated as alleged.  The defendants are without sufficient information or knowledge to respond to the remaining averments.

50.     Denied.

51.     Denied as alleged.  Admitted only that, on November 6, 2006, Hale was observed at 1403 West Sixth Street, the home of Raul Morales, the premises from which cocaine, handguns, and ammunition had been seized on Saturday, November 4, two days before.  Further admitted that Hale appeared to be removing items from the dwelling, in apparent preparation to leave Delaware.

52.     Denied as alleged.  Raul Morales, the former husband of Sandra Lopez, had been arrested on felony drug charges in conjunction with the search of the premises at 1403 West Sixth Street that yielded the cocaine, handguns, and ammunition.  Ms. Lopez was observed at the dwelling along with two children and Hale.  Answering defendants are without knowledge or belief as to Lopez' reason for being on the premises.

53.     Answering defendants are without sufficient information or knowledge to respond.

54.     Answering defendants are without sufficient information or knowledge to respond.

55.     Denied as alleged.  Admitted only that Hale was wearing a black hooded sweatshirt with a single large pocket in front, and a bulky leather jacket underneath.  Hale was wearing his Pagan gang "colors".

56.     Answering defendants are without sufficient information or knowledge to respond.

57.     Answering defendants are without sufficient information or knowledge to respond.

58.     Answering defendants are without sufficient information or knowledge to respond.

59.     Answering defendants are without sufficient information or knowledge to respond.

60.     Answering defendants are without sufficient information or knowledge to respond.

61.     Answering defendants are without sufficient information or knowledge to respond.

62.     Answering defendants are without sufficient information or knowledge to respond.

63.     Denied as alleged.  Admitted only that DSP officers had been conducting electronic surveillance of Hale and other conspirators involved in drug distribution, under the authority of orders issued by the Hon. Richard R. Cooch of the Superior Court of Delaware. Through their ongoing investigation, the officers learned of Hale's role in the sale of illegal drugs in Delaware and Virginia, as well as his possession of weapons and the risk of violence.

64.    Denied as alleged.  Admitted only that DSP officers had been conducting electronic surveillance of Hale and other conspirators involved in drug distribution, under the authority of orders issued by the Hon. Richard R. Cooch of the Superior Court of Delaware. Monitored telephone conversations and other investigation revealed that Hale was a key player in the distribution and sale of illegal drugs, and that probable cause existed to arrest him on felony charges.  Based on the information gained, the officers believed that Hale was about to flee the State of Delaware to avoid arrest.

65.    Denied as alleged. Monitored telephone conversations and other investigation revealed that Hale was a key player in the distribution and sale of illegal drugs.  Based on the information gained, the officers believed that Hale was about to flee the State of Delaware to avoid arrest.

66.    Denied.  By way of further response, all electronic surveillance was conducted pursuant to Delaware law and the Orders issued by Judge Cooch.

67.    Denied as alleged.  A search warrant executed at the 1403 West Sixth Street address on November 4, 2006 yielded significant quantities of cocaine, weapons, and ammunition hidden within the dwelling.  The dwelling was not secured after the search of the premises was completed, and the police did not maintain surveillance of the dwelling between Saturday and Monday.  On November 6, 2006, the police did not know whether the dwelling contained weapons or controlled substances.

68.    Denied.

69.    Denied.

70.    Denied.

71.    Denied as alleged.  WPD officers arrived at the scene in two undercover cars and an unmarked police car with emergency equipment.  DSP officers approached the scene in two vehicles.  The balance of the averment is denied.

72.     Denied as alleged.  The WPD officers acted quickly and properly to protect civilians and to secure the location.  The balance of the averment is denied.

73.     Denied as alleged.  Approximately six WPD officers approached Hale.  Ms. Lopez and the children were escorted to safety.  The officers wore vests with police insignia and identified themselves as police officers.  The balance of the averment is denied.

74.     Denied as alleged.  The officers verbally and loudly identified themselves as police officers, and were wearing protective vests with police insignia, and warned Hale to show his hands.  The officers did not wear uniforms.  Hale knew that they were police officers there to arrest him.  The balance of the averment is denied.

75.     Denied as alleged.  The WPD officers who attempted to arrest Hale identified themselves as police officers, and this fact was readily apparent and known to Hale, who was aware at the time that many of his co-conspirators had been arrested, and that search warrants had been executed and incriminating evidence seized at a number of locations associated with the drug operation, including the dwelling on whose steps he sat.  The balance of the averment is denied.

76.     Denied.  By way of further answer, the officers identified themselves as police.

77.     Denied.

78.     Denied as alleged.  As the WPD officers approached Hale, they identified themselves as police officers, told him he was under arrest, and demanded repeatedly that he show his hands.  The balance of the averment is denied.

79.     Denied as alleged.  Admitted only that the WPD officers utilized an effective approach for the apprehension of dangerous individuals on felony charges where the risk of flight and officer safety issues are presented, and the individual refuses to cooperate.

80.     Denied as alleged.  Admitted only that the WPD officers utilized an effective approach for the apprehension of dangerous individuals on felony charges where the risk of flight and officer safety issues are presented, and the individual refuses to cooperate.

81.     Denied as alleged.  It was not safe to approach Hale when his hands were hidden from view in the large front pocket of his sweatshirt, and he had defiantly refused to comply with the officers' commands to show his hands.  The intent of the WPD officers was to take custody of Hale without injury to him or the officers.

82.     Denied as alleged.  When Hale failed to comply with officers' directions, and after he was repeatedly warned to show his hands, one of the WPD officers utilized the taser device in an attempt to stun him.  The balance of the averment is denied.

83.     Denied as alleged.  Admitted only that Hale refused to comply with the officers' commands, and appeared defiant and menacing.

84.     Denied as alleged.  The use of the taser device was consistent with established procedures.  Answering defendants are without knowledge as to WPD rules and regulations.  The balance of the averment is denied.

85.     Denied as alleged.  Admitted only that Hale was momentarily stunned by the taser.

86.     Denied as alleged.  After the taser was used, one of the taser probes was dislodged.  Hale then removed the other taser probe and jumped to his feet in a hostile manner.  He continued to hide both of his hands in the large front pocket of his sweatshirt.  It was not safe for the officers to approach Hale.  The balance of the averment is denied.

87.     Denied as alleged.  Hale voluntarily removed the taser probe after the other probe had become dislodged, and the current was no longer running through his body.  He was no longer immobilized, and was able to comply with the officers' commands.  He was also in a position to harm the officers. The balance of the averment is denied.

88.     Denied as alleged.  When the taser is disconnected or deactivated, the subject will rapidly regain control, and will present an immediate risk to police officers.  The answering defendants are without knowledge as to WPD training.  DSP training emphasizes the risk of harm presented by an individual not immobilized by the taser.  The balance of the averment is denied.

89.     Denied as alleged.  The WPD officers secured Ms. Lopez and the children before approaching Hale.  At no time were Ms. Lopez or the children in any danger whatsoever.  The balance of the averment is denied.

90.     Denied.

91.     Denied.

92.     Admitted, by information and belief.

93.     Denied as alleged.  After the taser probes were dislodged and removed, Hale was not immobilized.  The balance of the averment is denied.

94.     The answering defendants are without knowledge or information concerning WPD rules and regulations.  The allegation is denied as stated with respect to DSP rules and regulations.  The taser is used to stun and temporarily incapacitate a subject.  It is not used to cause physical injury.

95.     Denied as alleged.  After Hale removed the taser probe after the other probe had become dislodged, the current was no longer running through his body.  He regained his feet and stood with his hands hidden in his sweatshirt pocket, in a menacing manner.  He was no longer immobilized, and was able to comply with the officers' commands.  It was not safe for the officers to approach him.  The balance of the averment is denied.

96.     Denied as alleged.  Before first approaching Hale, one or more of the WPD officers had secured a contractor, believed to be Mixson, inside the porch of the house next door, for his own safety.  The balance of the averment is denied.

97.     Denied as alleged.  After Hale stood up with his hands hidden in his front sweatshirt pocket, the WPD officers continued to command him to show his hands so that he might be arrested.  The balance of the averment is denied.

98.     Denied as alleged.  After Hale removed the taser probe after the other probe had become dislodged, the current was no longer running through his body.  He regained his feet and stood with his hands hidden in his sweatshirt pocket, in a menacing manner.  He was no longer

immobilized, and was able to comply with the officers' commands, yet voluntarily and willfully refused to do so. The balance of the averment is denied.

99.     Admitted, by information and belief, that the WPD officers attempted to taser Hale a third time.

100.     Denied as alleged. The use of the taser in an attempt to immobilize a suspect who posed an immediate threat to officers was justified. The balance of the averment is denied.

101.     Denied as alleged. After Hale removed the taser probe, the current was no longer running through his body. He regained his feet and stood with his hands hidden in his sweatshirt pocket, in a menacing manner. He was no longer immobilized. The WPD officers continued to yell commands for him to show his hands and give himself up, and Hale continued to refuse to comply. He stood facing them in a hostile manner, with his hands hidden in his large front sweatshirt pocket. It was not safe for the officers to approach him. The balance of the averment is denied.

102.     Denied as alleged. After the taser probe became dislodged, Hale was no longer immobilized, and was able to rip the second probe out of his body with his hand and to regain his feet. At this point, he was physically capable of removing both hands from where they were hidden. Rather than comply with repeated commands to show his hands, he hid both hands in the sweatshirt pocket.

103.     Denied.

104.     Denied, as to the answering defendants. The answering defendants are without knowledge or information as to what the WPD officers may have heard or seen.

105.     Denied.

106.     Denied, as to the answering defendants. The answering defendants are without knowledge or information as to what the WPD officers may have heard or seen.

107.     Denied as alleged.  After Hale jumped up and faced the officers with his hands hidden in his front sweatshirt pocket and refused all commands to show his hands, three shots were fired by the WPD officers.  The balance of the averment is denied.

108.     The answering defendants are without knowledge or belief as to the WPD force standards.  The averment is a misstatement of the DSP continuum of force, and is therefore denied.

109.     Denied.  By way of further answer, Lt. Ogden immediately requested an ambulance.

110.     Denied.

111.     Denied.

112.     Denied.

113.     Denied.  By way of further answer, no shots were fired at "point-blank" range, and Hale had regained his feet and was capable of complying with the officers' commands.

114.     Denied.  By way of further anwer, the WPD officers gave Hale repeated warnings to surrender and to show his hands and to drop his weapon.

115.     The answering defendants are without knowledge as to the belief of the WPD officers at the scene.  Denied as to the DSP officers.

116.     The answering defendants are without knowledge as to the focus of the WPD officers at the scene.  Admitted as to the DSP officers at the scene.

117.     Denied as alleged.  The use of a single weapon to defend the officers was consistent with training standards. The balance of the averment is denied.

118.     The answering defendants are without knowledge as to the belief of the WPD officers at the scene.  Denied as to the DSP officers.

119.     Denied.

120.     Denied.

121.    Denied.  By way of further answer, the officers knew that DSP had probable cause to arrest Hale on numerous felony counts, and that an arrest warrant was being prepared.

122.    Denied.

123.    Denied.

124.    Denied.

125.    Denied.

126.    Denied as alleged.  Denied that Sgt. Lester was present or had any involvement in the investigation of Hale.  Lt. Ogden arrived at the scene and observed from a distance the attempt by WPD officers to apprehend Hale.  Lt. Ogden did not direct the actions of the arresting WPD officers.  Lt. Ogden had no duty to intervene. The balance of the averment is denied.

127.    Denied.

128.    Denied.  By way of further answer, the circumstances of Hale's death were immediately and thoroughly investigated by WPD and by the State Department of Justice.

129.    Denied as alleged.  DSP officers involved in the drug and organized crime investigation had worked with Virginia authorities, particularly as to Hale's drug trafficking activities in Virginia.  The Virginia authorities were made aware of the evidence against Hale through electronic surveillance and other investigation.  The Virginia authorities conducted surveillance of Hale and assisted in the DSP investigation.  The balance of the averment is denied.

130.    Denied as alleged.  DSP officers provided Virginia authorities with facts establishing Hale's active role in drug distribution, including information contained in the arrest warrant affidavit prepared for Hale.  All information provided to Virginia authorities was true and accurate.  The balance of the averment is denied.

131.    Denied.

132.    Denied as alleged.  DSP officers advised the Virginia authorities that WPD had attempted to arrest Hale on drug charges, and that Hale had resisted arrest, and was killed.

133.    Denied as alleged.  DSP officers provided information to Virginia authorities which was subsequently used by Virginia authorities in obtaining a search warrant for the Virginia address used by Hale.  The balance of the averment is denied.

134.    Denied as alleged.  The Virginia authorities prepared an affidavit based in part on facts establishing Hale's role in the drug and organized crime conspiracy, and the issuing magistrate properly found that there was probable cause to search the address used by Hale in Virginia.  The balance of the averment is denied.

135.    Denied as alleged.  There were no false statements made by any DSP officer. The affidavit contained information provided by DSP officers as a result of their investigation of Hale, as well as information known to Virginia authorities about Hale.  The balance of the averment is denied.

136.    Denied as alleged.  The information provided by DSP officers and Virginia authorities established ample probable cause to search the address used by Hale in Virginia.  The balance of the averment is denied.

137.    Denied.

138.    Denied.

139.    Denied.

140.    Denied.

141.    Denied.

142.    The averment violates Rule 8(a)(2), which requires that pleadings set forth "a short and plain statement of the claim", Rule 8(e)(1), which requires that "[e]ach averment of a pleading shall be simple, concise, and direct", and Rule 10(b), which requires paragraphs limited to a statement of a single set of circumstances.  Without prejudice to the foregoing objection, each and every allegation is denied.

143.    Denied.

144.    Denied.

145.    Denied.

146.    Denied.

147.    The answering defendants are without sufficient information or knowledge to respond.

148.    The answering defendants are without sufficient information or knowledge to respond.

149.    The answering defendants are without sufficient information or knowledge to respond.

150.    The answering defendants are without sufficient information or knowledge to respond.

151.    The answering defendants are without sufficient information or knowledge to respond.

152.    The answering defendants are without sufficient information or knowledge to respond.

153.    The answering defendants are without sufficient information or knowledge to respond.

154.    The answering defendants are without sufficient information or knowledge to respond.

155.    The answering defendants are without sufficient information or knowledge to respond.

156.    To the extent that this allegation is directed at the answering defendants, it is denied.

157.    To the extent that this allegation is directed at the answering defendants, it is denied.

158.    The allegation is incomprehensible.  To the extent that this allegation is directed at the answering defendants, it is denied.

159.    To the extent that this allegation is directed at the answering defendants, it is denied.

160.    Denied.

161.    The answering defendants restate and incorporate herein by reference the responses set forth in the foregoing paragraphs.

162.    As this averment is directed at other defendants, no answer is required.  The facts alleged are denied by the answering defendants.

163.    As this averment is directed at other defendants, no answer is required.  The facts alleged are denied by the answering defendants.

164.    As this averment is directed at other defendants, no answer is required.  The facts alleged are denied by the answering defendants.

165.    As this averment is directed at other defendants, no answer is required.  The facts alleged are denied by the answering defendants.

166.    As this averment is directed at other defendants, no answer is required.  The facts alleged are denied by the answering defendants.

167.    As this averment is directed at other defendants, no answer is required.  The facts alleged are denied by the answering defendants.

168.    As this averment is directed at other defendants, no answer is required.  The facts alleged are denied by the answering defendants.

169.    As this averment is directed at other defendants, no answer is required.  The facts alleged are denied by the answering defendants.

170.    The answering defendants restate and incorporate herein by reference the responses set forth in the foregoing paragraphs.

171.    Denied.

172.    Denied.

173.    Denied.

174.    Denied.

175.    Denied.

176.    Denied.  By way of further answer, the DSP policies on the use of force do not apply to the apprehension of a suspect by WPD.

177.    Denied.  By way of further answer, the DSP policies on the use of force do not apply to the apprehension of a suspect by WPD.

178.    Denied.

179.    Denied.

180.    Denied.

181.    The answering defendants restate and incorporate herein by reference the responses set forth in the foregoing paragraphs.

182.    Denied.

183.    Denied as alleged.    Admitted only that the drug and organized crime investigation included Hale and other members of the Pagan Motorcycle Club.  The balance of the averment is denied.

184.    Denied as alleged.  The investigation into drug delivery and organized crime was conducted by the Delaware State Police.  At the conclusion of the investigation, numerous search warrants were executed at various locations, and many arrests were made.  DSP requested the assistance of WPD with regard to arrests and search warrants within the City of Wilmington. When Hale surfaced in Wilmington on Monday, DSP officers requested the assistance of WPD to apprehend him before he had a chance to flee.  The balance of the averment is denied.

185.    Denied as alleged.  DSP provided WPD with information from monitored telephone calls regarding Hale's role in the drug and organized crime conspiracy, including the likelihood that he would be armed and hostile, as well as a flight risk.  The balance of the averment is denied.

186.    Denied as alleged.  Hale was not under visual surveillance, and his whereabouts were unknown to DSP until he surfaced on Monday afternoon.  DSP monitored a phone call at approximately 1:00 p.m. on Monday, during which Hale revealed that he was at the West Sixth Street location.  DSP officers then began preparing an arrest warrant for Hale and a search warrant for the premises.  There was ample probable cause from the drug and organized crime investigation to arrest Hale, and the warrantless arrest was justified in light of exigent circumstances, namely Hale's impending flight  The balance of the averment is denied.

187.    Denied as alleged.  The DSP investigators were aware through their investigation of Hale's significant role in drug trafficking, as well as the threat he posed to arresting WPD officers, in light of his access to weapons and the risk of flight.  The balance of the averment is denied.

188.    Denied as alleged.  The officers who attempted to arrest Hale were from the WPD drug unit and the SWAT team under the command of WPD officers.  No DSP officers took part in the attempt to apprehend Hale, except as observers.  The DSP investigators provided the WPD officers with grounds to arrest Hale without a warrant.  The balance of the averment is denied.

189.    Denied.

190.    The answering defendants restate and incorporate herein by reference the responses set forth in the foregoing paragraphs.

191.    Denied as alleged.  Admitted only that DSP investigators communicated to the Virginia authorities facts establishing Hale's significant role in the drug and organized crime conspiracy, including Hale's possession of controlled substances, weapons, and cash used in drug transactions.  The Virginia court properly determined that probable cause existed to search the Virginia address utilized by Hale.  The balance of the averment is denied.

192.    Denied as alleged.  The information provided from the Delaware drug and organized crime investigation helped the Virginia authorities to establish probable cause to search the premises at the address used by Hale in Virginia.  The balance of the averment is denied.

193.    Denied.

194.    Denied.

195.    Answering defendants restate and incorporate herein by reference the responses set forth in the foregoing paragraphs.

196.    Denied.

197.    Answering defendants restate and incorporate herein by reference the responses set forth in the foregoing paragraphs.

198.    The allegation is incomprehensible.  To the extent it is directed at answering defendants, it is denied.  By way of further answer, Hale knew that the police officers were there to arrest him for his role in the drug and organized crime conspiracy.

199.    Denied.

200.    Denied.

201.    Answering defendants restate and incorporate herein by reference the responses set forth in the foregoing paragraphs.

202.    Denied.

203.    Denied.

204.    Denied.

205.    Denied.

206.    Denied.

207.    Denied.

**<u>Affirmative Defenses</u>**

1.    The plaintiffs fail to state a claim against the Delaware State Police defendants upon which relief can be granted by the Court, and the Complaint should therefore be dismissed, pursuant to Rule 12 (b)(6).

2.      All claims against the Delaware State Police, Department of Safety and Homeland Security, State of Delaware are barred by sovereign immunity under the Eleventh Amendment to the United States Constitution.

3.      All claims asserted against individual Delaware State Police officers are barred by the doctrine of qualified immunity.

4.      The Amended Complaint fails to state a cause of action against any of the Delaware State Police defendants under 42 U.S.C. §1983.

5.      The Amended Complaint fails to state a cause of action against any of the Delaware State Police defendants for alleged "conspiracy".

6.      Count V of the Amended Complaint fails to state a claim against the Delaware State Police defendants for alleged violations of the Constitution of the State of Delaware.

7.      Count VI of the Amended Complaint fails to state a claim against the Delaware State Police defendants for an alleged "assault and battery".

8.      Count VII of the Amended Complaint fails to state a claim against the Delaware State Police defendants for wrongful death.

WHEREFORE, the answering defendants ask that all claims in the Amended Complaint directed at said defendants be dismissed, as to them, with prejudice, and with all costs and fees payable by the plaintiffs.

**STATE OF DELAWARE**

**DEPARTMENT OF JUSTICE**

/s/ Ralph K. Durstein, III
Ralph K. Durstein, III #912
Deputy Attorney General
Carvel State Building
820 N. French Street, 6th Floor
Wilmington, DE  19801
(302) 577-8400
Attorney for DSP Defendants

Date:  April 30, 2007

**IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF DELAWARE**

ELAINE HALE, Individually and as            )
Administratrix of the Estate of Derek J. Hale  )
DENNIS W. HALE, and CONNIE M. HALE,        )
                                             )
        Plaintiffs,                          )
                                             )
                v.                           )        No. 07-166 ***
                                             )
Lieutenant WILLIAM BROWNE; Sgt. ANGEL       )
ALVERIO, Cpl. ROBERT CUNNINGHAM,            )
Cpl.  CHARLES EMORY, JR., Cpl. MITCHELL     )
RENTZ, Cpl. JEFFREY SILVERS, Cpl. GEORGE    )
TAYLOR, Cpl. JOSEPH LEARY,                  )
Cpl. RANDOLPH PFAFF, Cpl. DANNY SILVA,      )
Chief MICHAEL J. SZCZERBA,                  )
 in his official capacity; CITY OF          )
WILMINGTON, a municipal corporation;        )
Lieutenant PATRICK OGDEN; Sergeant          )
DARREN LESTER; Sergeant RANDALL HUNT;       )
Sergeant ALBERT PARTON; Detective VINCENT   )
CLEMONS; Detective DAVID CHORLTON;          )
Captain CHARLES J. SIMPSON; Major ALBERT    )
HOMIAK; Major JOSEPH PAPILI; Colonel        )
THOMAS F. MacLEISH, individually and in his )
official capacity; DIVISION OF STATE POLICE, )
DEPARTMENT OF SAFETY AND HOMELAND          )
SECURITY, STATE OF DELAWARE;                )
                                             )
        Defendants                           )

## CERTIFICATE OF MAILING AND/OR DELIVERY

        The undersigned certifies that on April 30, 2007, he caused the attached Answer of Patrick Ogden, Darren Lester, Randall Hunt, Albert Parton, Vincent Clemons, David Chorlton, Charles J. Simpson, Albert Homiak, Joseph Papili, Thomas F. MacLeish, and the Delaware State Police to the First Amended Complaint to be electronically filed with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

        Thomas S. Neuberger, Esquire          Robert Jacobs, Esquire
        Stephen J. Neuberger, Esquire         Thomas C. Crumplar, Esquire
        Two East Seventh Street, Suite 302    Two East Seventh Street, Suite 400
        Wilmington, DE 19801                  Wilmington, DE 19801

                                    **STATE OF DELAWARE
                                    DEPARTMENT OF JUSTICE**

                                    /s/  Ralph K. Durstein, III
                                    Ralph K. Durstein, III #912
                                    Deputy Attorney General
                                    Carvel State Building
                                    820 N. French Street, 6th Floor
                                    Wilmington, DE  19801
                                    (302) 577-8400
                                    Attorney for DSP Defendants

22