**IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **ELAINE HALE, Individually and as** | ) | |
| **Administratrix of the Estate of Derek J. Hale;** | ) | |
| **et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **No. 07-166-\*\*\*** |
| | ) | |
| | ) | |
| **Lieutenant WILLIAM BROWN; et al.,** | ) | |
| **Defendants** | ) | |

**RESPONSE OF THE DEFENDANTS LESTER, SIMPSON, AND PARTON
IN OPPOSITION TO PLAINTIFF'S MOTION TO AMEND COMPLAINT**

The named defendants Darren Lester, Charles Simpson, and Albert Parton hereby object, pursuant to Rule 15(a) and Rule 11(b)(3), to their inclusion in the proposed amended complaint submitted on behalf of the plaintiff, as set forth more fully below.

**A.    Nature of the Motion and Opposition**

1.    The plaintiff has moved the Court for leave to amend her initial pleading for a second time in this case. Her "Motion to Amend the First Amended Complaints" seeks to add three additional defendants: Captain Robert Coupe and Corporal Chris Popp of the Delaware State Police, and Mark Lewis of the Delaware Department of Correction. As these individuals were previously identified by the defense as witnesses[1], there is no objection to their being named as defendants.

---

[1] Initial Disclosures of the DSP defendants, Docket #45, served and filed on August 31, 2007.

2.    The plaintiff further seeks to add an additional claim against the Delaware State Police defendants, based on so-called "state-created danger".  Again the defense has no objection to this amendment, except as it pertains to the defendants Darren Lester, Charles Simpson, and Albert Parton ("these defendants").  For the reasons set forth below and in the attached affidavits, the Court should exercise its discretion to reject any pleading that continues to name these individuals as defendants.

3.    The Answer filed on behalf of the Delaware State Police defendants (Exhibit A hereto) specifically denies the allegations directed against Darren Lester[2], Charles J. Simpson[3], and Albert Parton[4], and further indicates that none of these officers had any involvement in the apprehension of Derek Hale, or in the drug and organized crime investigation that implicated Hale as an unindicted co-conspirator.  The plaintiff and her lawyers have thus been on notice since the filing of the Answer on April 30, 2007 that these three defendants had been named in error.

4.    On October 23, 2007, counsel for the DSP defendants wrote to plaintiff's local attorney, following the "meet and confer" teleconference, formally requesting that the plaintiff voluntarily dismiss the defendants Lester, Simpson, and Parton from the case.[5]  The letter further identified Captain Coupe as the Troop #2 Commander during the time frame of the investigation and arrest, and Cpl. Popp and Mr. Lewis as witnesses at or near the scene of the Hale shooting.

---

[2]  "Denied.  By way of further answer, Sgt. Lester was on sick leave due to a work-related injury and did not participate in the drug and organized crime investigation giving rise to the plaintiffs' lawsuit."

[3]  "Denied.  By way of further answer, Captain Simpson had been transferred by DSP, and played no role in the drug investigation from which plaintiffs' claims arise."

[4]  "Denied as alleged.  Admitted only that Sgt. Parton was the NCOIC of SORT at the time of the drug investigation giving rise to plaintiffs' claims.  The SORT team frequently participates in major drug arrests. Denied that the SORT team was involved in any way in the attempted arrest of Hale on November 6, 2006. Further denied that any of the officers present on the scene were under the command of Sgt. Parton. Liability is denied."

[5]  Exhibit B attached hereto.

5.      In the October 23, 2007 letter, counsel further advised that Darren Lester had been transferred out of the Special Investigations Unit in May 2006 (before the Hale investigation had commenced), and had been seriously injured when a drunken driver struck his police vehicle, causing him to be off work until January 1, 2007.  The plaintiff and her lawyers were advised that Captain Simpson had been replaced by Captain Coupe as Commander of the Special Investigations Unit on May 5, 2006, and had been reassigned to Troop #4 in Georgetown.  Finally, the defense disclosed that, while Sgt. Parton was a member of the SORT (Special Operations and Response Team) team, neither he nor the team had any involvement in the Hale arrest or shooting.  Parton and other SORT members participated in the arrest of some of Hale's co-conspirators, but had no involvement in the investigation, which was an SIU operation.

6.      The defense letter was acknowledged by a message on October 31, 2007 from plaintiff's counsel, suggesting that there would be no problem with a voluntary dismissal of uninvolved officers, after review of the letter by co-counsel.[6]  Defense counsel responded the following day[7] by pointing out that the names of the three defendants were absent from the reports, logs, applications, and affidavits provided to the plaintiff during the course of discovery.  In response to the plaintiff's Request for Production, the defense has produced numerous police investigative reports, electronic surveillance applications, orders, and logs, search warrant affidavits, and other materials relating to the investigation of Hale and his co-conspirators.  None of these documents

---

[6]  "I'm in receipt of your letter of 10/23 about various named defendants who were not involved in the case.  As we discussed during our meet and confer teleconference, I expect there will not be any problems dismissing Troopers who had no personal involvement.  I'm sending your letter to my co-counsel.  Once we meet and confer, I'll be getting back with you on this in greater detail and we'll figure out how to proceed."  Exhibit C.
[7]  Exhibit D.

contain reference to Lester, Simpson, or Parton, with respect to the investigation or the arrest or shooting of Hale.

7.        On January 15, 2008, the plaintiff lawyers sent a message[8] seeking consent to an amendment adding Coupe, Popp, and Lewis as additional defendants, and adding the "state-created danger" claim against all defendants, including Lester, Simpson, and Parton.  The message indicated that the plaintiff would then – **after** the Second Amended Complaint had been filed – circulate a stipulation dismissing Lester and Simpson, but declined to address the involvement of Parton.  The defense responded by pointing out that the proper way to accomplish this would be to simply eliminate any mention of Lester and Simpson in the amended pleading, and by indicating opposition to any proposed amendment that retained their names as defendants.[9]  Counsel for the plaintiff then sent a copy of an internal message, through which they refused to remove the names of Lester, Simpson, and Parton from the proposed amended pleading.[10] Further, the message contained a striking change of position:  the plaintiff (in apparent retaliation for the defense position seeking a "clean" amended pleading omitting mention of the defendants to be dismissed) "probably will no longer strike the two defendants from the case without their depositions."

### B.        Affidavits of these Defendants

8.        The affidavit of Darren Lester is attached as Exhibit H.  It reflects not only his transfer out of the SIU prior to the Hale investigation, but also his serious injuries sustained in a head-on collision that left him incapacitated and unable to work.  It also recites that, as a result of a Complaint containing false information, and the failure of the

---

[8]  Exhibit E.
[9]  Exhibit F.
[10]  Exhibit G.

plaintiff lawyers to reasonably investigate the incident before naming him as a defendant, Sgt. Lester and his family "have been placed in potential danger and subjected to ridicule as a result of distorted accounts appearing in the news media, and…have been improperly forced to defend myself…"

9.    The affidavit of Captain Simpson is attached hereto as Exhibit I.  It points out that he was succeeded by Captain Coupe before the Hale investigation had even commenced.  For that reason, the allegations concerning his participation in the Hale investigation are false.

10.    The affidavit of Sgt. Parton is attached hereto as Exhibit J.  Sgt. Parton avers that he has never been a member of the SIU, and had no role whatsoever in the Hale investigation.  While Sgt. Parton and the SORT unit had some involvement in arrests of Hale's co-conspirators and the execution of search warrants, neither Parton nor the SORT unit had any involvement in the arrest or shooting of Hale.

**C.    <u>Standard Governing Factual Contentions</u>**

11.    Rule 15(a) provides that a party seeking to amend a complaint for a second time may do so only with leave of the Court.  Amendments, although liberally granted, rest within the sound discretion of the trial court.  *Massarsky v. General Motors Corp.,* 706 F.2d 11, 125 (3rd Cir. 1983) (Refusal to permit employee to amend pleadings to add pendent state law claim was not error).  Leave to amend should be freely given only in the absence of such factors as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party…, futility of amendment…"  *Foman v. Davis,* 371 U.S. 178,182 (1962).  In *DRR, L.L.C. v Sears, Roebuck and Co.,* 171 F.R.D.

162,167 (D.Del. 1997), Judge Schwartz denied leave to amend to a plaintiff seeking to add a new claim to avoid summary judgment, based on undue delay and the prejudice to the defendant.  While distinguishable on its facts, this case nevertheless stands for the inherent power of the Court to examine the facts and circumstances behind a proposed amendment, and to deny amendment based on the factors set forth in *Foman, supra.*

12.    Denial of leave to amend is reversible only for an abuse of discretion. *Wimm v. Eckerd Corp.,* 3 F.3d 137 (5th Cir. 1993) (Motion denied due to bad faith and dilatory motive).  A district court does not abuse its discretion in denying a motion to amend when amending the pleading would be a futile act.  *Wilson v. American Trans Air, Inc.,* 874 F.2d 386, 392 (7th Cir. 1989) (Denial of leave to amend proper where record did not support joint venture theory of liability).  An amendment is a futile gesture if the amended pleading could not survive a motion for summary judgment.  *Estate of Porter v Illinois,* 36 F.3d 684, 690 (7th Cir. 1994) (Court considered additional allegations concerning murder of mental patient in state custody and determined they could not survive a motion for summary judgment based on sovereign immunity).  A belated attempt to amend a complaint to add an alternative form of relief will be tested as to whether the plaintiff has put forth sufficient evidence to survive summary judgment. *Dole Fresh Fruit Co. v. Delaware Cold Storage, Inc.,* 961 F.Supp. 676, 686 at note ll (D.Del. 1997).

13.    A district court has broad discretion to deny leave to amend, particularly where the plaintiff has already had one or more opportunities to amend.  *Mir v. Fosburg,* 646 F.2d 342, 347 (9th Cir. 1980) (Dismissal of amended complaint after several years of proceedings).  When the plaintiff has submitted a proposed amended complaint, the

district judge may review that pleading for adequacy, and need not allow its filing if it fails to state a claim, or where it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle the plaintiff to relief. *Ricciuti v. N.Y.C. Transit Authority,* 941 F.2d 119, 123 (2nd Cir. 1991) (amended Complaint sufficient to make out §1983 claim). In *Wimm v. Eckerd Corp., supra* at 139-140, the Court denied a motion for leave to file a second amended complaint, and granted the defense motion for summary judgment. The Court found that the amendment sought would be futile, in that the fact issue had been thoroughly investigated and factual support for the amendment was lacking. "[H]aving considered the record, the court is seriously concerned about plaintiffs' apparent bad faith and dilatory motive in seeking leave to amend their complaint at this time." *Id.* at 140.

14.    Rule 11(b)(3) provides that an attorney submitting a pleading is certifying that, to the best of counsel's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the allegations and other factual contentions have evidentiary support, or are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery. *Jenkins v. Methodist Hospitals of Dallas, Inc.,* 478 F.3d 255, 263 (5th Cir. 2007) (Court issued *sua sponte* Rule to Show Cause for failure of lawyer to correct error pointed out by opposing counsel). Factual allegations fail to satisfy Rule 11(b)(3) when they are "unsupported by *any* information obtained prior to filing." *Morris v. Wachovia Securities, **Inc**.,* 448 F.3d 268, 277 (4th Cir. 2006) (no "substantial failure" to comply with Rule in securities fraud case). See also *Methode Electronics, Inc. v. Adam Technologies, Inc.*, 371 F.3d 923, 925 (7th Cir. 2004) (venue allegation lacked evidentiary basis); *Oxford Asset Management Ltd. v.*

*Jaharis,* 297 F.3d 1182, 1197 (11th Cir. 2002) (plaintiffs and their counsel violated Rule 11(b)(3) by being deliberately indifferent to the lack of factual support for the claims asserted in the complaint).

### D.    Leave of Court Should Not be Given

15.    In this case leave to amend must be denied, as to any and all claims directed against Captain Simpson, Sgt. Parton, and Sgt. Lester.  To allow the plaintiff to proceed against these defendants would be an exercise in futility.  It is manifest from the record – not just the affidavits, but the voluminous records of the investigation and the shooting of Hale - that there is no evidentiary basis for the plaintiff to proceed.  Nor is there any prospect that such facts would arise from further investigation or discovery. Deferring such a ruling would only sanction the plaintiff's petulant refusal to correct the record.  The State and the City have identified those officers involved in the drug and organized crime investigation and the apprehension of Hale, including supervisors up the chain of command.  The plaintiff, a year after filing the original Complaint, and with full access to the documentary record, has failed to allege any facts in support of her claims against these defendants, or that would contradict their affidavits.  She has failed to meet the burden imposed by the caselaw cited above to articulate facts in support of her claims against these defendants.  It is unrebutted that these defendants simply had no role in any of the events set forth in the Amended Complaint as bases for the plaintiff's claims.

16.    Each of the defendants has been prejudiced by the plaintiff's error in naming them in the original Complaint and the Amended Complaint, without a shred of evidence to support such claims.  Through counsel, they have taken affirmative steps to advise the plaintiff lawyers of this error, and to identify unnamed officers who were

present at the scene of the shooting or who participated in the investigation. They have waited – impatiently – for a year for the plaintiff to correct the error. During this time they and their families have suffered notoriety and potential danger as a result of the extensive and abusive adverse publicity generated on behalf of Hale. Needless to say, they would continue to suffer prejudice were the plaintiff given leave to amend through a pleading that continues to bear their names, in the absence of a scintilla of factual evidence against them.

17.     The record of the disclosures and negotiations regarding these defendants evidences good faith on the part of the defense, and a distinct lack of such good faith on the part of the plaintiff. Where the defense has provided the names of three additional officers, and has indicated no opposition to their inclusion as defendants, the plaintiff has responded by unaccountably refusing to voluntarily dismiss defendants against whom she has no case. As to Lester and Simpson, the dilatory motive of the plaintiff is clear in her implicit acknowledgement that she lacks a claim against them, combined with her insistence on including their names in the proposed Second Amended Complaint. The suggestion that the plaintiff would dismiss these defendants, only _after_ first naming them in an amended pleading, is a tactic the Court should not sanction. Proof of improper motive comes in the form of the threat, in retaliation for these defendants asserting their right not to be named, to withhold dismissal and to needlessly prolong discovery by taking their depositions.

### E.     These Defendants Are Entitled to Summary Judgment

18.     Rule 56(b) provides that a party against whom a claim is asserted may, *at any time,* move, with or without supporting affidavits, for a summary judgment in that

party's favor. The defendants Lester, Simpson, and Parton have each submitted affidavits establishing that they were not involved in the drug and organized crime investigation that culminated in the indictment of 32 persons and the attempted arrest of Derek Hale. Moreover, through the initial disclosures pursuant to Rule 26(a)(1)(A), the defense has identified Captain Simpson's successor, and two other individuals present at or near the scene, when Hale was shot and killed by Wilmington Police officers. Each of these individuals has been added as a defendant in the proposed amended complaint, and the defense has no objection to their inclusion.

19.     When a motion for summary judgment has been made and duly supported by affidavits, the adverse party may not rest upon the mere allegations of its pleading, but rather must respond by setting forth specific facts showing that there is a genuine issue for trial. This the plaintiffs have not done, and, as the affidavits make clear, cannot do in this case. The facts are simple, unadorned, and irrefutable.

20.     Partial summary judgment shall be granted forthwith, if the factual record shows that there is no genuine factual issue as to any material fact as a matter of law. Rule 56(c). The adverse party may attempt to respond with affidavits, but the Court has discretion as to whether affidavits are to be supplemented or opposed by further discovery. Rule 56(e). The burden in this case falls squarely on the plaintiff lawyers, to demonstrate that the allegations directed at these defendants have evidentiary support, or are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery. Rule 11(b)(3). If the plaintiffs cannot, in support of their Motion, make the required showing, the Motion must be denied.

Wherefore, the defendants Lester, Simpson, and Parton ask that the Court enter an Order in substantially the form of that attached hereto, denying the plaintiff leave to amend, without prejudice to the filing of an amended pleading that eliminates the names of these defendants, and the allegations directed against them.  These defendants further ask that the Court find that they are entitled to summary judgment as to all claims asserted against them, as the plaintiff has failed to elicit any facts in support of her allegations against them, and the disclosures and affidavits of the defendants make it clear that there is no prospect of such factual support, and that further investigation or discovery would be a waste of time.

**STATE OF DELAWARE**
**DEPARTMENT OF JUSTICE**

<u>/s/ Ralph K. Durstein, III</u>
Ralph K. Durstein, III #912
Deputy Attorney General
Carvel State Building
820 N. French Street, 6th Floor
Wilmington, DE  19801
(302) 577-8400
Attorney for DSP Defendants

Date:  January 25, 2008

**IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF DELAWARE**


| | | |
|---|---|---|
| **ELAINE HALE, Individually and as** | ) | |
| **Administratrix of the Estate of Derek J. Hale;** | ) | |
| **et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **No. 07-166-\*\*\*** |
| | ) | |
| | ) | |
| **Lieutenant WILLIAM BROWN; et al.,** | ) | |
| **Defendants** | ) | |


## <u>ORDER</u>

This Court having reviewed the motion of the plaintiff for leave to file a Second

Amended Complaint and the response (with affidavits attached thereto) of the defendants

Lester, Simpson, and Parton opposing the filing of any pleading with allegations against

them as defendants, and any response, IT IS HEREBY ORDERED AS FOLLOWS.

1.     The Motion of the plaintiff for leave to file a Second Amended Complaint

is **denied**.

2.     The denial of leave to amend is without prejudice to a renewed application

to file an amended complaint striking the names of the present defendants Lester,

Simpson, and Parton, as well as all allegations against them.

3.     The Court specifically finds that the defendants Lester, Simpson, and

Parton have satisfied the standard for the entry of summary judgment as to all claims

asserted against them by the plaintiff.

4.      No costs or fees incurred by the plaintiff attorneys in the pursuit of the

motion to amend may be recovered in this case.


Dated:_____                    _____
                                                  Hon. Mary Pat Thynge
                                                  United States Magistrate Judge

**IN THE UNITED STATES DISTRICT COURT**
**IN AND FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ELAINE HALE, Individually and as | ) | |
| Administratrix of the Estate of Derek J. Hale | ) | |
| DENNIS W. HALE, and CONNIE M. HALE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 07-166 *** |
| | ) | |
| Lieutenant WILLIAM BROWNE; et al, | ) | |
| Defendants | ) | |

**CERTIFICATE OF MAILING AND/OR DELIVERY**

The undersigned certifies that on January 25, 2008, he caused the attached Response of the Defendants Lester, Simpson, and Parton in Opposition to Plaintiff's Motion to Amend Complaint to be electronically filed with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

Thomas S. Neuberger, Esquire
Stephen J. Neuberger, Esquire
Two East Seventh Street, Suite 302
Wilmington, DE 19801

Robert Jacobs, Esquire
Thomas C. Crumplar, Esquire
Two East Seventh Street, Suite 400
Wilmington, DE 19801

John A. Parkins, Jr., Esquire
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801

Rosamaria Tassone, Esquire
City of Wilmington Law Department
City/County Building, 9th Floor
800 North French Street
Wilmington, DE 19801

**STATE OF DELAWARE**
**DEPARTMENT OF JUSTICE**

/s/ Ralph K. Durstein, III
Ralph K. Durstein, III #912
Deputy Attorney General
Carvel State Building
820 N. French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8400
Attorney for DSP Defendants

EXHIBIT

A

**IN THE UNITED STATES DISTRICT COURT**
**IN AND FOR THE DISTRICT OF DELAWARE**

ELAINE HALE, Individually and as            )
Administratrix of the Estate of Derek J. Hale )
DENNIS W. HALE, and CONNIE M. HALE,         )
                                            )
      Plaintiffs,                           )
                                            )
            v.                        )    No. 07-166 ***
                                            )
Lieutenant WILLIAM BROWNE; Sgt. ANGEL       )
ALVERIO, Cpl. ROBERT CUNNINGHAM,            )
Cpl. CHARLES EMORY, JR., Cpl. MITCHELL      )
RENTZ, Cpl. JEFFREY SILVERS, Cpl. GEORGE    )
TAYLOR, Cpl. JOSEPH LEARY,                  )
Cpl. RANDOLPH PFAFF, Cpl. DANNY SILVA,      )
Chief MICHAEL J. SZCZERBA,                  )
  in his official capacity; CITY OF            )
WILMINGTON, a municipal corporation;        )
Lieutenant PATRICK OGDEN; Sergeant          )
DARREN LESTER; Sergeant RANDALL HUNT;       )
Sergeant ALBERT PARTON; Detective VINCENT   )
CLEMONS; Detective DAVID CHORLTON;          )
Captain CHARLES J. SIMPSON; Major ALBERT    )
HOMIAK; Major JOSEPH PAPILI; Colonel        )
THOMAS F. MacLEISH, individually and in his )
official capacity; DIVISION OF STATE POLICE, )
DEPARTMENT OF SAFETY AND HOMELAND           )
SECURITY, STATE OF DELAWARE;                )
                                            )
      Defendants                            )

**ANSWER OF PATRICK OGDEN, DARREN LESTER, RANDALL HUNT, ALBERT
PARTON, VINCENT CLEMONS, DAVID CHORLTON, CHARLES J. SIMPSON,
ALBERT HOMIAK, JOSEPH PAPILI, THOMAS F. MacLEISH, AND THE
DELAWARE STATE POLICE TO THE FIRST AMENDED COMPLAINT**

      1.     The averment violates Rule 8(a)(2), which requires that pleadings set forth "a

short and plain statement of the claim", Rule 8(e)(1), which requires that "[e]ach averment of a

pleading shall be simple, concise, and direct", and Rule 10(b), which requires paragraphs limited

to a statement of a single set of circumstances. Without prejudice to this objection, admitted only

that the plaintiffs have filed a civil action seeking damages, and that Derek Hale, a suspect in a

major drug and organized crime investigation, was shot and killed by police officers attempting to

apprehend him. The other allegations are denied.

2.      The averment violates Rule 8(a)(2), which requires that pleadings set forth "a short and plain statement of the claim", Rule 8(e)(1), which requires that "[e]ach averment of a pleading shall be simple, concise, and direct", and Rule 10(b), which requires paragraphs limited to a statement of a single set of circumstances.  Without prejudice to this objection, the allegations are denied, except that the attempted arrest of Hale took place during daylight hours.

3.      Denied.

4.      The allegation of violations of Delaware State Police rules and regulations is denied.  The answering defendants are without knowledge as to Wilmington Police Department rules or regulations.

5.      Denied as alleged.  Admitted only that this Court has subject matter jurisdiction over the claims asserted.

6.      The answering defendants are without knowledge as to the filing of any notices with the City of Wilmington.  The balance of the averment is denied.

7.      Admitted, by information and belief.

8.      The answering defendants are without sufficient information or knowledge to respond.

9.      The answering defendants are without sufficient information or knowledge to respond.

10.     Denied as alleged.  Admitted only that Lt. Brown shot and killed the decedent.  The answering defendants are without any knowledge as to the balance of the allegations, and they are denied.

11.     Admitted, by information and belief.

12.     Admitted, by information and belief.

13.     Admitted, by information and belief.

14.     Admitted, by information and belief.

15.     Admitted, by information and belief.

2

16.    Admitted, by information and belief.

17.    Admitted, by information and belief.

18.    Admitted, by information and belief.

19.    Admitted, by information and belief.

20.    Admitted, by information and belief.

21.    Denied as alleged.  Admitted only that Chief Szczerba has been sued.  The balance of the averment is denied.

22.    Admitted.

23.    Admitted, except that at the time of the drug investigation giving rise to the Complaint, Lt. Ogden was a sixteen-year veteran.  Liability is denied.

24.    Denied.  By way of further answer, Sgt. Lester was on sick leave due to a work-related injury and did not participate in the drug and organized crime investigation giving rise to the plaintiffs' lawsuit.

25.    Liability is denied.  Balance admitted.

26.    Denied as alleged.  Admitted only that Sgt. Parton was the NCOIC of SORT at the time of the drug investigation giving rise to plaintiffs' claims.  The SORT team frequently participates in major drug arrests.  Denied that the SORT team was involved in any way in the attempted arrest of Hale on November 6, 2006.  Further denied that any of the officers present on the scene were under the command of Sgt. Parton.  Liability is denied.

27.    Denied as alleged.  Admitted only that Detective Clemons was a member of the DSP SIU at the time of the drug investigation giving rise to these claims.  Denied that he participated in the attempted apprehension of the decedent.  Liability is denied.

28.    Denied as alleged.  Admitted only that Detective Chorlton was a member of the DSP SIU at the time of the drug investigation giving rise to these claims.  Denied that he participated in the attempted apprehension of the decedent.  Liability is denied.

29.    Denied.  By way of further answer, Captain Simpson had been transferred by DSP, and played no role in the drug investigation from which plaintiffs' claims arise.

30.    Denied as alleged.  Admitted only that Major Homiak had responsibility for SIU at the time of the drug investigation from which the plaintiffs' claims arise.  The balance of the averment is denied.

31.    Denied as alleged.  Beginning in 2005, the Delaware State Police undertook an investigation into drug and weapon distribution and organized crime activities that culminated in the indictment of 32 individuals on a total of 160 counts.  Hale was an unindicted co-conspirator in the drug and organized crime conspiracy.  Hale and many of those indicted were members of the Pagan motorcycle club.  The investigation was monitored through the chain of command at DSP, and the electronic surveillance of the suspects, including Hale, was supervised by the Department of Justice and the Superior Court of the State of Delaware.

32.    Denied as alleged.  Admitted only that Major Papili had administrative responsibility for the SORT team at the time of the attempted apprehension of the decedent.  Denied that the SORT team was involved in the attempted apprehension of Hale.  The balance of the averment is denied.

33.    Denied as alleged.  Admitted only that Colonel MacLeish bore ultimate responsibility for the operations of DSP, including the drug and organized crime investigation giving rise to the claims asserted.  The balance of the averment is denied.

34.    The first sentence is admitted.  Defendants are without knowledge as to the plaintiffs' motives in naming DSP as a defendant in their lawsuit.  The balance of the averment is denied.

35.    The allegations of Constitutional violations and deprivations are denied.  The balance of the averment calls for a legal conclusion, and is therefore denied.

36.    Denied as alleged.  The place and date of birth and parents' names are admitted.  Answering defendants are without knowledge as to Hale's service record.

4

37.    Admitted, by information and belief.

38.    Denied as alleged.  Admitted only that Hale was a member of the northern Virginia chapter of the Pagan Motorcycle Club.  Further admitted that some Pagans have a military background.  The answering defendants are without knowledge or information as to Hale's motivation, other than profit from illegal drug distribution, for joining the Pagans.

39.    Decedent's age at the time of his death and his Virginia address are admitted. Answering defendants are without knowledge as to Hale's actual residence and living arrangements at the time of his death.

40.    Denied as alleged.  Admitted only that Hale was a member of the Pagan Motorcycle Club affiliate in northern Virginia.  Further admitted that Hale established contacts with Pagans in Delaware for the purpose of dealing in illegal narcotic drugs and in weapons. Hale was identified as an unindicted co-conspirator in an Indictment returned by the New Castle County Grand Jury naming a total of thirty-two defendants in a drug racketeering operation that was investigated by the Delaware State Police.  The balance of the averment is denied.

41.    Denied as alleged  In 2005, the DSP SIU began to investigate ongoing drug transactions involving members of the Pagan Motorcycle Club in Delaware.  This undercover investigation was justified by the considerable quantities of illegal drugs, weapons, and cash involved.

42.    Denied as alleged.  The purpose of the undercover investigation was to identify, arrest, prosecute, and incarcerate individuals involved in a conspiracy to distribute large quantities or illegal controlled substances in Delaware.  The allegations as to the media are false.

43.    Denied.

44.    Denied as alleged.  Part of the investigation involved an inquiry into the backgrounds of various suspects through law enforcement channels and sources.  The focus of the investigation was on the activities of various individuals involved in the distribution of controlled substances.

5

45.    Denied as alleged.  Investigation revealed that Hale was acting as a courier for drugs and money between the Delaware Pagans and the northern Virginia Pagans.

46.    Denied.    By way of further answer, the investigation revealed Hale's involvement in the drug and organized crime conspiracy, as set forth in the Indictment listing him as an unindicted co-conspirator.

47.    Denied as to Colonel MacLeish, Major Homiak, Major Papili, and Captain Simpson.  Lt. Ogden and Sgt. Hunt had personal knowledge as well as information from other law enforcement sources regarding the evidence establishing Hale's culpability.

48.    Denied as alleged.  The defendants had knowledge of the facts set forth above, as well as other evidence implicating Hale in the drug conspiracy, that furnished probable cause for the arrest of Hale.

49.    Denied as alleged.  Admitted by information and belief that some members of the Pagan club participated as alleged.    The defendants are without sufficient information or knowledge to respond to the remaining averments.

50.    Denied.

51.    Denied as alleged.  Admitted only that, on November 6, 2006, Hale was observed at 1403 West Sixth Street, the home of Raul Morales, the premises from which cocaine, handguns, and ammunition had been seized on Saturday, November 4, two days before.  Further admitted that Hale appeared to be removing items from the dwelling, in apparent preparation to leave Delaware.

52.    Denied as alleged.  Raul Morales, the former husband of Sandra Lopez, had been arrested on felony drug charges in conjunction with the search of the premises at 1403 West Sixth Street that yielded the cocaine, handguns, and ammunition.  Ms. Lopez was observed at the dwelling along with two children and Hale.  Answering defendants are without knowledge or belief as to Lopez' reason for being on the premises.

53.    Answering defendants are without sufficient information or knowledge to respond.

54.    Answering defendants are without sufficient information or knowledge to respond.

55.    Denied as alleged.  Admitted only that Hale was wearing a black hooded sweatshirt with a single large pocket in front, and a bulky leather jacket underneath.  Hale was wearing his Pagan gang "colors".

56.    Answering defendants are without sufficient information or knowledge to respond.

57.    Answering defendants are without sufficient information or knowledge to respond.

58.    Answering defendants are without sufficient information or knowledge to respond.

59.    Answering defendants are without sufficient information or knowledge to respond.

60.    Answering defendants are without sufficient information or knowledge to respond.

61.    Answering defendants are without sufficient information or knowledge to respond.

62.    Answering defendants are without sufficient information or knowledge to respond.

63.    Denied as alleged.  Admitted only that DSP officers had been conducting electronic surveillance of Hale and other conspirators involved in drug distribution, under the authority of orders issued by the Hon. Richard R. Cooch of the Superior Court of Delaware. Through their ongoing investigation, the officers learned of Hale's role in the sale of illegal drugs in Delaware and Virginia, as well as his possession of weapons and the risk of violence.

64.     Denied as alleged.  Admitted only that DSP officers had been conducting electronic surveillance of Hale and other conspirators involved in drug distribution, under the authority of orders issued by the Hon. Richard R. Cooch of the Superior Court of Delaware. Monitored telephone conversations and other investigation revealed that Hale was a key player in the distribution and sale of illegal drugs, and that probable cause existed to arrest him on felony charges.  Based on the information gained, the officers believed that Hale was about to flee the State of Delaware to avoid arrest.

65.     Denied as alleged. Monitored telephone conversations and other investigation revealed that Hale was a key player in the distribution and sale of illegal drugs.  Based on the information gained, the officers believed that Hale was about to flee the State of Delaware to avoid arrest.

66.     Denied.  By way of further response, all electronic surveillance was conducted pursuant to Delaware law and the Orders issued by Judge Cooch.

67.     Denied as alleged.  A search warrant executed at the 1403 West Sixth Street address on November 4, 2006 yielded significant quantities of cocaine, weapons, and ammunition hidden within the dwelling.  The dwelling was not secured after the search of the premises was completed, and the police did not maintain surveillance of the dwelling between Saturday and Monday.  On November 6, 2006, the police did not know whether the dwelling contained weapons or controlled substances.

68.     Denied.

69.     Denied.

70.     Denied.

71.     Denied as alleged.  WPD officers arrived at the scene in two undercover cars and an unmarked police car with emergency equipment.  DSP officers approached the scene in two vehicles. The balance of the averment is denied.

8

72.    Denied as alleged.  The WPD officers acted quickly and properly to protect civilians and to secure the location.  The balance of the averment is denied.

73.    Denied as alleged.  Approximately six WPD officers approached Hale.  Ms. Lopez and the children were escorted to safety.  The officers wore vests with police insignia and identified themselves as police officers.  The balance of the averment is denied.

74.    Denied as alleged.  The officers verbally and loudly identified themselves as police officers, and were wearing protective vests with police insignia, and warned Hale to show his hands.  The officers did not wear uniforms.  Hale knew that they were police officers there to arrest him.  The balance of the averment is denied.

75.    Denied as alleged.  The WPD officers who attempted to arrest Hale identified themselves as police officers, and this fact was readily apparent and known to Hale, who was aware at the time that many of his co-conspirators had been arrested, and that search warrants had been executed and incriminating evidence seized at a number of locations associated with the drug operation, including the dwelling on whose steps he sat.  The balance of the averment is denied.

76.    Denied.  By way of further answer, the officers identified themselves as police.

77.    Denied.

78.    Denied as alleged.  As the WPD officers approached Hale, they identified themselves as police officers, told him he was under arrest, and demanded repeatedly that he show his hands.  The balance of the averment is denied.

79.    Denied as alleged.  Admitted only that the WPD officers utilized an effective approach for the apprehension of dangerous individuals on felony charges where the risk of flight and officer safety issues are presented, and the individual refuses to cooperate.

80.    Denied as alleged.  Admitted only that the WPD officers utilized an effective approach for the apprehension of dangerous individuals on felony charges where the risk of flight and officer safety issues are presented, and the individual refuses to cooperate.

81.     Denied as alleged.  It was not safe to approach Hale when his hands were hidden from view in the large front pocket of his sweatshirt, and he had defiantly refused to comply with the officers' commands to show his hands.  The intent of the WPD officers was to take custody of Hale without injury to him or the officers.

82.     Denied as alleged.  When Hale failed to comply with officers' directions, and after he was repeatedly warned to show his hands, one of the WPD officers utilized the taser device in an attempt to stun him.  The balance of the averment is denied.

83.     Denied as alleged.  Admitted only that Hale refused to comply with the officers' commands, and appeared defiant and menacing.

84.     Denied as alleged.  The use of the taser device was consistent with established procedures.  Answering defendants are without knowledge as to WPD rules and regulations.  The balance of the averment is denied.

85.     Denied as alleged.  Admitted only that Hale was momentarily stunned by the taser.

86.     Denied as alleged.  After the taser was used, one of the taser probes was dislodged.  Hale then removed the other taser probe and jumped to his feet in a hostile manner.  He continued to hide both of his hands in the large front pocket of his sweatshirt.  It was not safe for the officers to approach Hale.  The balance of the averment is denied.

87.     Denied as alleged.  Hale voluntarily removed the taser probe after the other probe had become dislodged, and the current was no longer running through his body.  He was no longer immobilized, and was able to comply with the officers' commands.  He was also in a position to harm the officers. The balance of the averment is denied.

88.     Denied as alleged.  When the taser is disconnected or deactivated, the subject will rapidly regain control, and will present an immediate risk to police officers.  The answering defendants are without knowledge as to WPD training.  DSP training emphasizes the risk of harm presented by an individual not immobilized by the taser.  The balance of the averment is denied.

89.     Denied as alleged. The WPD officers secured Ms. Lopez and the children before approaching Hale. At no time were Ms. Lopez or the children in any danger whatsoever. The balance of the averment is denied.

90.     Denied.

91.     Denied.

92.     Admitted, by information and belief.

93.     Denied as alleged. After the taser probes were dislodged and removed, Hale was not immobilized. The balance of the averment is denied.

94.     The answering defendants are without knowledge or information concerning WPD rules and regulations. The allegation is denied as stated with respect to DSP rules and regulations. The taser is used to stun and temporarily incapacitate a subject. It is not used to cause physical injury.

95.     Denied as alleged. After Hale removed the taser probe after the other probe had become dislodged, the current was no longer running through his body. He regained his feet and stood with his hands hidden in his sweatshirt pocket, in a menacing manner. He was no longer immobilized, and was able to comply with the officers' commands. It was not safe for the officers to approach him. The balance of the averment is denied.

96.     Denied as alleged. Before first approaching Hale, one or more of the WPD officers had secured a contractor, believed to be Mixson, inside the porch of the house next door, for his own safety. The balance of the averment is denied.

97.     Denied as alleged. After Hale stood up with his hands hidden in his front sweatshirt pocket, the WPD officers continued to command him to show his hands so that he might be arrested. The balance of the averment is denied.

98.     Denied as alleged. After Hale removed the taser probe after the other probe had become dislodged, the current was no longer running through his body. He regained his feet and stood with his hands hidden in his sweatshirt pocket, in a menacing manner. He was no longer

immobilized, and was able to comply with the officers' commands, yet voluntarily and willfully refused to do so. The balance of the averment is denied.

99.    Admitted, by information and belief, that the WPD officers attempted to taser Hale a third time.

100.    Denied as alleged. The use of the taser in an attempt to immobilize a suspect who posed an immediate threat to officers was justified. The balance of the averment is denied.

101.    Denied as alleged. After Hale removed the taser probe, the current was no longer running through his body. He regained his feet and stood with his hands hidden in his sweatshirt pocket, in a menacing manner. He was no longer immobilized. The WPD officers continued to yell commands for him to show his hands and give himself up, and Hale continued to refuse to comply. He stood facing them in a hostile manner, with his hands hidden in his large front sweatshirt pocket. It was not safe for the officers to approach him. The balance of the averment is denied.

102.    Denied as alleged. After the taser probe became dislodged, Hale was no longer immobilized, and was able to rip the second probe out of his body with his hand and to regain his feet. At this point, he was physically capable of removing both hands from where they were hidden. Rather than comply with repeated commands to show his hands, he hid both hands in the sweatshirt pocket.

103.    Denied.

104.    Denied, as to the answering defendants. The answering defendants are without knowledge or information as to what the WPD officers may have heard or seen.

105.    Denied.

106.    Denied, as to the answering defendants. The answering defendants are without knowledge or information as to what the WPD officers may have heard or seen.

12

107.    Denied as alleged.  After Hale jumped up and faced the officers with his hands hidden in his front sweatshirt pocket and refused all commands to show his hands, three shots were fired by the WPD officers.  The balance of the averment is denied.

108.    The answering defendants are without knowledge or belief as to the WPD force standards.  The averment is a misstatement of the DSP continuum of force, and is therefore denied.

109.    Denied.  By way of further answer, Lt. Ogden immediately requested an ambulance.

110.    Denied.

111.    Denied.

112.    Denied.

113.    Denied.  By way of further answer, no shots were fired at "point-blank" range, and Hale had regained his feet and was capable of complying with the officers' commands.

114.    Denied.  By way of further anwer, the WPD officers gave Hale repeated warnings to surrender and to show his hands and to drop his weapon.

115.    The answering defendants are without knowledge as to the belief of the WPD officers at the scene.  Denied as to the DSP officers.

116.    The answering defendants are without knowledge as to the focus of the WPD officers at the scene.  Admitted as to the DSP officers at the scene.

117.    Denied as alleged.  The use of a single weapon to defend the officers was consistent with training standards. The balance of the averment is denied.

118.    The answering defendants are without knowledge as to the belief of the WPD officers at the scene.  Denied as to the DSP officers.

119.    Denied.

120.    Denied.

121.    Denied.  By way of further answer, the officers knew that DSP had probable cause to arrest Hale on numerous felony counts, and that an arrest warrant was being prepared.

122.    Denied.

123.    Denied.

124.    Denied.

125.    Denied.

126.    Denied as alleged.  Denied that Sgt. Lester was present or had any involvement in the investigation of Hale. Lt. Ogden arrived at the scene and observed from a distance the attempt by WPD officers to apprehend Hale. Lt. Ogden did not direct the actions of the arresting WPD officers. Lt. Ogden had no duty to intervene. The balance of the averment is denied.

127.    Denied.

128.    Denied.  By way of further answer, the circumstances of Hale's death were immediately and thoroughly investigated by WPD and by the State Department of Justice.

129.    Denied as alleged.  DSP officers involved in the drug and organized crime investigation had worked with Virginia authorities, particularly as to Hale's drug trafficking activities in Virginia. The Virginia authorities were made aware of the evidence against Hale through electronic surveillance and other investigation.  The Virginia authorities conducted surveillance of Hale and assisted in the DSP investigation.  The balance of the averment is denied.

130.    Denied as alleged.  DSP officers provided Virginia authorities with facts establishing Hale's active role in drug distribution, including information contained in the arrest warrant affidavit prepared for Hale. All information provided to Virginia authorities was true and accurate. The balance of the averment is denied.

131.    Denied.

132.    Denied as alleged.  DSP officers advised the Virginia authorities that WPD had attempted to arrest Hale on drug charges, and that Hale had resisted arrest, and was killed.

14

133.    Denied as alleged. DSP officers provided information to Virginia authorities which was subsequently used by Virginia authorities in obtaining a search warrant for the Virginia address used by Hale. The balance of the averment is denied.

134.    Denied as alleged. The Virginia authorities prepared an affidavit based in part on facts establishing Hale's role in the drug and organized crime conspiracy, and the issuing magistrate properly found that there was probable cause to search the address used by Hale in Virginia. The balance of the averment is denied.

135.    Denied as alleged. There were no false statements made by any DSP officer. The affidavit contained information provided by DSP officers as a result of their investigation of Hale, as well as information known to Virginia authorities about Hale. The balance of the averment is denied.

136.    Denied as alleged. The information provided by DSP officers and Virginia authorities established ample probable cause to search the address used by Hale in Virginia. The balance of the averment is denied.

137.    Denied.

138.    Denied.

139.    Denied.

140.    Denied.

141.    Denied.

142.    The averment violates Rule 8(a)(2), which requires that pleadings set forth "a short and plain statement of the claim", Rule 8(e)(1), which requires that "[e]ach averment of a pleading shall be simple, concise, and direct", and Rule 10(b), which requires paragraphs limited to a statement of a single set of circumstances. Without prejudice to the foregoing objection, each and every allegation is denied.

143.    Denied.

144.    Denied.

15

EXHIBIT

B

New Castle County                          Writer's Direct Dial: (302) 577-8510
Major Litigation Unit                              FAX: (302) 577-5866


October 23, 2007


Stephen J. Neuberger, Esquire
Suite 302
2 East Seventh Street
Wilmington, DE 19801-3707

     Re:   <u>Hale v. Browne</u>, C.A. No. 07-166-***

Dear Steve:

I am writing to formally request that the plaintiffs voluntarily dismiss the defendants
**Darren Lester**, **Charles J. Simpson**, and **Albert Parton** from this lawsuit, for the reasons
briefly stated below.  This information is provided as a follow-up to our "meet and
confer" telephone conversation.  I am prepared to proceed with a motion for partial
summary judgment, supported by affidavits, directed at all claims against these
individuals.  However, rather than burden the Court, I would prefer that the plaintiffs
acknowledge that these individuals have no place in the lawsuit.

Our initial disclosures in this case identified **Captain Robert Coupe** as the Troop2
Commander with direct responsibility for the investigation leading to the indictment of
thirty-two defendants and the naming of Hale as an unindicted co-conspirator.
Further, **Cpl. Chris Popp** of the Delaware State Police and **Mark Lewis** of the
Department of Corrections were present at the scene of the Hale shooting as observers.
They, along with the named defendant **Lt. Patrick Ogden**, are the only known
eyewitnesses to the shooting with Delaware State Police connections.

As I indicated to you in our conversation, I would not oppose an amendment of the Complaint for the purpose of adding these individuals as defendants, provided that the claims against Lester, Simpson, and Parton were voluntarily dismissed. Consent to the amendment would only be a recognition of the liberal construction of Rule 15 by the Court, and the defendants would deny any wrongdoing or any involvement in Hale's shooting. We would reserve the right to assert any and all defenses on their behalf in this litigation.

**Darren Lester** was transferred out of the Special Investigations Unit in May of 2006. Some two weeks after that, he was seriously injured when a drunken driver struck his patrol vehicle. He was not able to return to work until January 1, 2007. He had no role in the investigation of Hale.

**Captain Simpson** was replaced as Commander of the Special Investigations Unit on May 5, 2006. He was reassigned to Troop #4, where he is Troop Commander. He had no active role in the Pagan drug investigation, and no involvement in the investigation or apprehension of Hale. As noted above, Captain Coupe filled that role at Troop #2.

**Sergeant Parton** is a member of the DSP SORT (Special Operations and Response Team) team, and was so assigned at the time of the Hale shooting. As such, he was deployed to assist in the execution of some of the many search warrants arising from the Pagan investigation. However, he was not assigned to the Hale arrest, which was handled by the Wilmington Police Department. He was not present. DSP SORT had no involvement in the Hale shooting. Sgt. Parton had no involvement in the investigation of Hale.

As you might imagine, each of these individuals was puzzled, and ultimately upset, at being named a defendant in this lawsuit. Each is prepared to submit an affidavit as to their lack of participation. Their names are conspicuously absent from the police investigative reports regarding Hale's criminal activity. The time to correct this error is now, particularly as we have identified the correct Troop Commander and all of the known DSP eyewitnesses to the shooting. I again ask that the plaintiffs voluntarily dismiss these individuals.

Very truly yours,

_____

Ralph K. Durstein, III
Counsel for DSP Defendants

xc: John A. Parkins, Jr.
    Sgt. Darren Lester
    Sgt. Al Parton
    Captain Chip Simpson

# EXHIBIT

# C

## Durstein III Ralph (DOJ)

| | |
|---|---|
| **From:** | Stephen J. Neuberger [SJN@neubergerlaw.com] |
| **Sent:** | Wednesday, October 31, 2007 4:35 PM |
| **To:** | Durstein III Ralph (DOJ) |
| **Subject:** | Hale |

Ralph,

I'm in receipt of your letter of 10/23 about various named defendants who were not involved in the case. As we discussed during our meet and confer teleconference, I expect there will not be any problems dismissing Troopers who had no personal involvement.

I'm sending your letter to my co-counsel. Once we meet and confer, I'll be getting back with you on this in greater detail and we'll figure out how to proceed.

-Steve

**********************************
Stephen J. Neuberger, Esq.
The Neuberger Firm
Attorneys and Counsellors at Law
Two East Seventh Street, Suite 302
Wilmington, DE 19801-3707
Phone: 302-655-0582
Fax: 302-655-9329
E-Mail: SJN@NeubergerLaw.com

EXHIBIT

D

## Durstein III Ralph (DOJ)

**From:** Durstein III Ralph (DOJ)
**Sent:** Thursday, November 01, 2007 11:52 AM
**To:** 'Stephen J. Neuberger'
**Subject:** RE: Hale

**Thanks.  Let me know if you need more information.  It can be hard to "prove a negative", but their names are absent from the reports, logs, applications, affidavits we have provided.  Each could submit an affidavit as to their lack of involvement, if there are doubters.**

**Dirk Durstein**
**Deputy Attorney General**
-----Original Message-----
**From:** Stephen J. Neuberger [mailto:SJN@neubergerlaw.com]
**Sent:** Wednesday, October 31, 2007 4:35 PM
**To:** Durstein III Ralph (DOJ)
**Subject:** Hale

Ralph,

I'm in receipt of your letter of 10/23 about various named defendants who were not involved in the case.  As we discussed during our meet and confer teleconference, I expect there will not be any problems dismissing Troopers who had no personal involvement.

I'm sending your letter to my co-counsel.  Once we meet and confer, I'll be getting back with you on this in greater detail and we'll figure out how to proceed.

-Steve

**********************************
Stephen J. Neuberger, Esq.
The Neuberger Firm
Attorneys and Counsellors at Law
Two East Seventh Street, Suite 302
Wilmington, DE 19801-3707
Phone: 302-655-0582
Fax: 302-655-9329
E-Mail: SJN@NeubergerLaw.com

# EXHIBIT

# E

## Durstein III Ralph (DOJ)

**From:**    Cheryl Hertzog [CherylH@neubergerlaw.com]
**Sent:**    Tuesday, January 15, 2008 9:37 AM
**To:**    Parkins Esq., John; Durstein III Ralph (DOJ)
**Cc:**    Thomas C. Crumplar, Esq.; Thomas S. Neuberger
**Subject:** RE: Hale v. Browne, amended complaint

Please see attached.

~ Cheryl

**From:** Thomas S. Neuberger
**Sent:** Tuesday, January 15, 2008 9:35 AM
**To:** Parkins Esq., John; Ralph Durstein, Esq.
**Cc:** Thomas C. Crumplar, Esq.
**Subject:** Hale v. Browne, amended complaint

John and Dirk,

Cheryl is sending you momentarily a highlighted copy of our amended complaint adding a state created danger count at the end and adding as defendants Capt Coupe, Cpl Popp and officer Lewis of DOC.

Please advise whether you consent to this filing and I will prepare the appropriate documents and get this done by Friday.

Then we will circulate a stipulation dismissing the two earlier troopers for which we received affidavits of their non involvement.

As to Sgt. Parton I prefer not to address his involvement until after I depose him. Since I have cross examined or deposed him in at least two other cases and know of his roles in SORT I need to depose him first before I can address Dirk's request to dismiss him.

In that regard, I am sure it is no surprise to you that I do not expect to try a case with over two dozen defendants to a jury. Later I am sure we all will cooperatively address who we can dismiss before trial, as well as Parton.

Thank you for your cooperation.

Tom
*****************************************
Thomas S. Neuberger, Esquire
The Neuberger Firm
Attorneys And Counsellors At Law
Two East Seventh Street, Suite 302
Wilmington, Delaware 19801-3707
Phone 302.655.0582
Fax 302.655.9329
Email: TSN@NeubergerLaw.com

# EXHIBIT

# F

## Durstein III Ralph (DOJ)

**From:**      Durstein III Ralph (DOJ)
**Sent:**      Tuesday, January 15, 2008 11:47 AM
**To:**        Cheryl Hertzog; Parkins Esq., John
**Cc:**        Thomas C. Crumplar, Esq.; Thomas S. Neuberger
**Subject:** RE: Hale v. Browne, amended complaint

**Cheryl, thanks for forwarding the proposed amended complaint. I cannot consent to a complaint
that continues to name Captain Simpson, Sgt. Lester, and Sgt. Parton as defendants in the lawsuit.
I appreciate your commitment to voluntarily dismiss Simpson and Lester, but the proper way to
accomplish that would be to eliminate any mention of them in the amended pleading. I would
oppose any attempt to amend the complaint in the manner you have proposed.**

**From:** Cheryl Hertzog [mailto:CherylH@neubergerlaw.com]
**Sent:** Tuesday, January 15, 2008 9:37 AM
**To:** Parkins Esq., John; Durstein III Ralph (DOJ)
**Cc:** Thomas C. Crumplar, Esq.; Thomas S. Neuberger
**Subject:** RE: Hale v. Browne, amended complaint

Please see attached.

~ Cheryl

**From:** Thomas S. Neuberger
**Sent:** Tuesday, January 15, 2008 9:35 AM
**To:** Parkins Esq., John; Ralph Durstein, Esq.
**Cc:** Thomas C. Crumplar, Esq.
**Subject:** Hale v. Browne, amended complaint

John and Dirk,

Cheryl is sending you momentarily a highlighted copy of our amended complaint adding a state created danger
count at the end and adding as defendants Capt Coupe, Cpl Popp and officer Lewis of DOC.

Please advise whether you consent to this filing and I will prepare the appropriate documents and get this done by
Friday.

Then we will circulate a stipulation dismissing the two earlier troopers for which we received affidavits of their non
involvement.

As to Sgt. Parton I prefer not to address his involvement until after I depose him. Since I have cross examined or
deposed him in at least two other cases and know of his roles in SORT I need to depose him first before I can
address Dirk's request to dismiss him.

In that regard, I am sure it is no surprise to you that I do not expect to try a case with over two dozen defendants
to a jury. Later I am sure we all will cooperatively address who we can dismiss before trial, as well as Parton.

Thank you for your cooperation.

Tom
*****************************************
Thomas S. Neuberger, Esquire
The Neuberger Firm

1/22/2008

Attorneys And Counsellors At Law
Two East Seventh Street, Suite 302
Wilmington, Delaware 19801-3707
Phone 302.655.0582
Fax 302.655.9329
Email: TSN@NeubergerLaw.com

EXHIBIT

G

## Durstein III Ralph (DOJ)

**From:**   Thomas S. Neuberger [TSN@NeubergerLaw.com]
**Sent:**   Tuesday, January 15, 2008 3:26 PM
**To:**     Parkins Esq., John; Cheryl Hertzog; Durstein III Ralph (DOJ)
**Cc:**     1 Hale team; Thomas C. Crumplar, Esq.
**Subject:** Re: Hale v. Browne, amended complaint

Cheryl,

Please prepare an appropriate motion to file with the court  by Friday and also in the format required by the rules for a motion to amend with appropriate attachments.  Note the State opposes the motion and whatever the City advises us.  This being the case we probably will no longer strike the two defendants from the case without their depositions.  After we depose them we will see.

Tom


----- Original Message -----
**From:** Durstein III Ralph (DOJ)
**To:** Cheryl Hertzog ; Parkins Esq., John
**Cc:** Thomas C. Crumplar, Esq. ; Thomas S. Neuberger
**Sent:** Tuesday, January 15, 2008 11:53 AM
**Subject:** RE: Hale v. Browne, amended complaint

**Cheryl, thanks for forwarding the proposed amended complaint.  I cannot consent to a complaint that continues to name Captain Simpson, Sgt. Lester, and Sgt. Parton as defendants in the lawsuit.  I appreciate your commitment to voluntarily dismiss Simpson and Lester, but the proper way to accomplish that would be to eliminate any mention of them in the amended pleading.  I would oppose any attempt to amend the complaint in the manner you have proposed.**


**From:** Cheryl Hertzog [mailto:CherylH@neubergerlaw.com]
**Sent:** Tuesday, January 15, 2008 9:37 AM
**To:** Parkins Esq., John; Durstein III Ralph (DOJ)
**Cc:** Thomas C. Crumplar, Esq.; Thomas S. Neuberger
**Subject:** RE: Hale v. Browne, amended complaint

Please see attached.

~ Cheryl

**From:** Thomas S. Neuberger
**Sent:** Tuesday, January 15, 2008 9:35 AM
**To:** Parkins Esq., John; Ralph Durstein, Esq.
**Cc:** Thomas C. Crumplar, Esq.
**Subject:** Hale v. Browne, amended complaint

John and Dirk,

Cheryl is sending you momentarily a highlighted copy of our amended complaint adding a state created danger count at the end and adding as defendants Capt Coupe, Cpl Popp and officer Lewis of DOC.

Please advise whether you consent to this filing and I will prepare the appropriate documents and get this done by Friday.

Then we will circulate a stipulation dismissing the two earlier troopers for which we received affidavits of their non involvement.

As to Sgt. Parton I prefer not to address his involvement until after I depose him. Since I have cross examined or deposed him in at least two other cases and know of his roles in SORT I need to depose him first before I can address Dirk's request to dismiss him.

In that regard, I am sure it is no surprise to you that I do not expect to try a case with over two dozen defendants to a jury. Later I am sure we all will cooperatively address who we can dismiss before trial, as well as Parton.

Thank you for your cooperation.

Tom
*****************************************
Thomas S. Neuberger, Esquire
The Neuberger Firm
Attorneys And Counsellors At Law
Two East Seventh Street, Suite 302
Wilmington, Delaware 19801-3707
Phone 302.655.0582
Fax 302.655.9329
Email: TSN@NeubergerLaw.com

1/22/2008

# EXHIBIT

# H

## IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ELAINE HALE, Individually and as<br>Administratrix of the Estate of Derek J. Hale;<br>et al., | ) <br> ) <br> ) <br> ) | |
| Plaintiffs, | ) <br> ) | |
| v. | ) <br> ) | No. 07-166 |
| Lieutenant WILLIAM BROWN; et al.,<br>Defendants | ) <br> ) <br> ) <br> ) | |

### Affidavit of Darren J. Lester

Sergeant Darren J. Lester of the Delaware State Police states as follows:

1. I have been a member of the Delaware State Police for 18 years, and have earned the rank of Sergeant.

2. I was transferred out of the Special Investigations Unit on or about May 8th of 2006, and sent to Troop 6 as a road Sergeant. I had no further duties or responsibilities with the SIU after that date.

3. Approximately two weeks later, in May of 2006, while on routine road patrol duty, I was struck head-on by an intoxicated driver (BAC=.17%), who was driving the wrong way on top of the Summit Bridge.

4. As a result of this accident, I sustained a very badly shattered right tibula and fibula and other related injuries, including two broken ribs, causing considerable pain and requiring extensive medical treatment.

5. I underwent reconstructive surgery on my leg on June 7, 2006, and was immobilized in an external fixator for five months, until mid-November of 2006.

6. I was off work totally until returning to light duty on January 1, 2007.

7. I am still currently on light duty and going through extensive physical therapy three times a week and aqua therapy the other days.

8. I played no part in the wiretap investigation leading to the indictment of 32 individuals and the identification of Derek Hale as a co-conspirator in a major drug ring. I was transferred from SIU before the investigation moved forward from the concept stage. I never read the wire interception affidavit, nor did I take part in any of the search warrants that were obtained and executed.

9. I have no knowledge of anything that transpired the date Mr. Hale died. On that date I was sitting on my couch at my house repositioning my right leg.

10. As a result of being falsely named in the Complaint filed in this case, myself and my family have been placed in potential danger and subjected to ridicule as a result of distorted accounts appearing in the news media, and I have improperly been forced to defend myself and to have my name removed from the caption of the Complaint. I believe that the Complaint was prepared based on false information, and that reasonable investigation would have revealed that I did not play any role in this investigation, and in fact could not have played any such role, due to my reassignment from SIU and my subsequent work-related injury.

BE IT REMEMBERED that on this _____ day of _____, 2007,

personally appeared before me, the Subscriber, a Notary Public for the State and County

aforesaid, **DARREN LESTER**, who, being by me duly sworn according to law did

depose and say that the foregoing statement is correct to the best of her knowledge,

information and belief.

_____
DARREN LESTER

SWORN TO AND SUBSCRIBED before me on this ___ day of _____, 2007

_____
Notary Public

# EXHIBIT

# I

**IN THE UNITED STATES DISTRICT COURT**
**IN AND FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ELAINE HALE, Individually and as )<br>Administratrix of the Estate of Derek J. Hale; )<br>et al., )<br> )<br>      Plaintiffs, )<br> )<br>        v. )<br> )<br> )<br>Lieutenant WILLIAM BROWN; et al., )<br>      Defendants )  | No. 07-166-*** |

### Affidavit of Charles J. Simpson

Captain Charles J. Simpson of the Delaware State Police states as follows:

1. I have been a member of the Delaware State Police for 27 years, and have earned the rank of Captain.

2. I was the Commander of the Special Investigations Unit of the Delaware State Police, operating out of Troop #2, until May 5, 2006.

3. On May 5, 2006, I was reassigned to Delaware State Police Troop #4 in Georgetown, as Troop Commander.

4. I was succeeded as Commander of the Troop 2 Criminal Investigative Unit (formerly the Special Investigations Unit) by Captain Robert Coupe.

5. I had no role or involvement in the investigation of the Pagan Motorcycle Club that culminated in the indictment and prosecution of numerous individuals and the Identification of Derek Hale as an unindicted co-conspirator.

6. I had no role or involvement in the apprehension of Derek Hale or in the shooting death of Mr. Hale.

7. I have reviewed the Complaint filed by the plaintiff in this matter. The allegations concerning my participation in the Pagan investigation are false.

BE IT REMEMBERED that on this _____ day of _____, 2007,

personally appeared before me, the Subscriber, a Notary Public for the State and County

aforesaid, **CHARLES J. SIMPSON**, who, being by me duly sworn according to law did

depose and say that the foregoing statement is correct to the best of her knowledge,

information and belief.

_____
CHARLES J. SIMPSON

SWORN TO AND SUBSCRIBED before me on this ___ day of _____, 2007

_____
Notary Public

# EXHIBIT

# J

**IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ELAINE HALE, Individually and as<br>Administratrix of the Estate of Derek J. Hale;<br>et al., | ) <br> ) <br> ) <br> ) | |
| Plaintiffs, | ) <br> ) | |
| v. | ) <br> ) | No. 07-166-*** |
| Lieutenant WILLIAM BROWN; et al.,<br>Defendants | ) <br> ) <br> ) | |

<u>**Affidavit of Alfred Parton**</u>

Sergeant Alfred Parton of the Delaware State Police states as follows:

1.  I have been a member of the Delaware State Police for __ years, and have earned the rank of Sergeant.

2.  I am presently work out of Delaware State Police Troop #2, and have been so assigned since _____ __, ____.

3.  I have never been a member of the Delaware State Police Special Investigations Unit (SIU).

4.  I have been a member of the Delaware State Police SORT (Special Operations and Response Team) since _____ __, ____.

5.  I had no role or involvement in the investigation of the Pagan Motorcycle Club that culminated in the indictment and prosecution of numerous individuals and the identification of Derek Hale as an unindicted co-conspirator.

6.  In my role as a SORT team member, I did participate in the apprehension and arrest of individuals identified in the Pagan Motorcycle Club drug and organized crime investigation, and in the execution of search warrants at various locations outside the City of Wilmington.

7. I had no role or involvement in the apprehension of Derek Hale or in the shooting death of Mr. Hale. I was not present at the scene, nor was I on duty at the time. I had no authority over the police officers who were at the scene. I did not provide any information concerning Mr. Hale to any officer at the scene.

8. I have reviewed the Complaint filed by the plaintiff in this matter. The allegations concerning my participation in the Pagan investigation and the arrest of Hale are false.

BE IT REMEMBERED that on this _____ day of _____, 2008,

personally appeared before me, the Subscriber, a Notary Public for the State and County

aforesaid, **ALFRED PARTON**, who, being by me duly sworn according to law did

depose and say that the foregoing statement is correct to the best of her knowledge,

information and belief.

_____
ALFRED PARTON

SWORN TO AND SUBSCRIBED before me on this ___ day of _____, 2008

_____
Notary Public