**IN THE UNITED STATES DISTRICT COURT**
**IN AND FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ELAINE HALE, Individually and as | ) |
| Administratrix of the Estate of Derek J. Hale | ) |
| DENNIS W. HALE, and CONNIE M. HALE, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )    No. 07-166 GMS |
| | ) |
| Lieutenant WILLIAM BROWNE; Sgt. | ) |
| ANGEL ALVERIO, Cpl. Hector Cuadrado; | ) |
| Cpl. ROBERT CUNNINGHAM, | ) |
| Cpl. CHARLES EMORY, JR., Cpl. MITCHELL | ) |
| RENTZ, Cpl. JEFFREY SILVERS, Cpl. GEORGE | ) |
| TAYLOR, Cpl. JOSEPH LEARY, | ) |
| Cpl. RANDOLPH PFAFF, Cpl. DANNY SILVA, | ) |
| Chief MICHAEL J. SZCZERBA, | ) |
| in his official capacity; CITY OF | ) |
| WILMINGTON, a municipal corporation; | ) |
| Lieutenant PATRICK OGDEN; Sergeant | ) |
| RANDALL HUNT; Detective VINCENT | ) |
| CLEMONS; Detective DAVID CHORLTON; | ) |
| Major ALBERT HOMIAK; Major JOSEPH PAPILI; | ) |
| Colonel  THOMAS F. MacLEISH, individually | ) |
| and in his official capacity; | ) |
| Captain ROBERT COUPE;Corporal CHRIS POPP; | ) |
| DIVISION OF STATE POLICE, | ) |
| DEPARTMENT OF SAFETY AND HOMELAND | ) |
| SECURITY, STATE OF DELAWARE; | ) |
| MARK LEWIS, Delaware Department of Correction | ) |
| | ) |
| Defendants. | ) |

**ANSWER OF STATE DEFENDANTS: PATRICK OGDEN,  RANDALL HUNT,**
**VINCENT CLEMONS, DAVID CHORLTON,  ROBERT COUPE, CHRIS POPP, MARK**
**LEWIS, ALBERT HOMIAK, JOSEPH PAPILI, THOMAS F. MACLEISH, AND THE**
**DELAWARE STATE POLICE TO THE  SECOND AMENDED COMPLAINT**

1.     The averment states legal conclusions and argument to which no response is deemed necessary.  This averment further violates Rule 8(a)(2), which requires that pleadings set forth "a short and plain statement of the claim"; Rule 8(e)(1), which requires that "[e]ach averment of a pleading shall be simple, concise, and direct", and Rule 10(b), which requires paragraphs limited to a statement of a single set of circumstances.  Without waiver  of this objection, and to the extent any response is deemed necessary, admitted only that the plaintiffs have filed a civil action, and that Derek Hale, a suspect in a major drug and organized crime

investigation, was shot and killed by police officers attempting to apprehend him.  The balance of the averment is denied.

2.      The averment states legal conclusions and argument to which no response is deemed necessary.  This averment further violates Rule 8(a)(2), which requires that pleadings set forth "a short and plain statement of the claim"; Rule 8(e)(1), which requires that "[e]ach averment of a pleading shall be simple, concise, and direct", and Rule 10(b), which requires paragraphs limited to a statement of a single set of circumstances.  Without waiver of this objection, and to the extent any response is deemed necessary, the allegations are denied, except that the attempted arrest of Hale took place during daylight hours.

3.      Denied.

4.      The allegation of violations of Delaware State Police rules and regulations is denied.  Specifically denied that any DSP defendant[1] participated in the tasering or shooting of suspect Hale.  The answering defendants are without knowledge as to Wilmington Police Department rules or regulations.

5.      Denied as alleged.  Admitted only that this Court has subject matter jurisdiction over the claims asserted.

6.      The answering defendants are without knowledge as to the filing of any notices with the City of Wilmington.  The balance of the averment is denied.

7.      Admitted, upon information and belief.

8.      Admitted, upon information and belief.

9.      Admitted, upon information and belief.

10.     Denied as alleged.  Admitted only that Lt. Browne fired the shot  that killed the decedent.  The answering defendants are without any knowledge as to the balance of the allegations, and they are denied.

---

[1]  As in the Second Amended Complaint, the use of the term "DSP Defendant[s]" in this Answer will encompass DOC Probation Officer, Defendant, Mark Lewis.

11.    Admitted, by information and belief.

12.    Admitted, by information and belief.

13.    Admitted, by information and belief.

14.    Admitted, by information and belief.

15.    Admitted, by information and belief.

16.    Admitted, by information and belief.

17.    Admitted, by information and belief.

18.    Admitted, by information and belief.

19.    Admitted, by information and belief.

20.    Admitted, by information and belief.

21.    Denied as alleged.  Admitted only that Chief Szczerba has been sued.  The balance of the averment is denied.

22.    Admitted.

23.    Admitted, except that at the time of the drug investigation giving rise to the Complaint, Lt. Ogden was a sixteen-year veteran.  Any and all liability on the part of Lt. Ogden is denied.

24.    [DELETED]

25.    Admitted only that Sgt. Hunt was a Sergeant serving in the Criminal Intelligence Unit  of DSP at the time of the events alleged.  Any and all liability on the part of Sgt. Hunt is denied.

26.    [DELETED].

27.    Denied as alleged.  Admitted only that Detective Clemons was a member of the DSP SIU at the time of the events alleged.  Denied that he participated in the attempted apprehension of the decedent.  Any and all liability on the part of Detective Clemons is denied.

28.     Denied as alleged.  Admitted only that Detective Charlton was a member of the DSP SIU at the time of the events alleged.  Denied that he participated in the attempted apprehension of the decedent.  Any and all liability on the part of Detective Charlton is denied.

29.     [DELETED].

30.     Denied as alleged.  Admitted only that Major Homiak had responsibility for SIU at the time of the events alleged.  The balance of the averment is denied.  Any and all liability on the part of Major Homiak is denied.

31.     Denied as alleged.  Beginning in 2005, the Delaware State Police undertook an investigation into drug and weapons distribution and organized crime activities that culminated in the indictment of 32 individuals on a total of 160 counts.  At the time of his death, Hale was an unindicted co-conspirator in the drug and organized crime conspiracy, and DSP had evidence of his participation in criminal activity.  Hale and many of those indicted were members of the Pagan motorcycle club.  The investigation was monitored through the chain of command at DSP, and the electronic surveillance of the suspects, including Hale, was supervised by the Department of Justice and the Superior Court of the State of Delaware.

32.     Denied as alleged.  Admitted only that Major Papili had administrative responsibility for the SORT team at the time of the events alleged. Denied that the SORT team was involved in the attempted apprehension of Hale.  The balance of the averment is denied.  Any and all liability on the part of Major Papili  is denied.

33.     Denied as alleged.  Admitted only that Colonel MacLeish bore ultimate responsibility for the overall operations of DSP, including the drug and organized crime investigation pertaining to the events alleged.  The balance of the averment is denied.  Any and all liability on the part of Colonel MacLeish is denied.

34.     Denied as alleged.  Admitted only that Captain Coupe was the Troop 2 Commander at the time of the events alleged.  Any and all liability on the part of Captain Coupe is denied.

35.    Denied as alleged.  Admitted only that Corporal Popp was a Corporal with DSP, and a member of the Governor's Task Force, at the time of the events alleged.  Any and all liability on the part of Corporal Popp is denied.

36.    The first sentence is admitted.  Defendants are without knowledge as to the plaintiffs' motives in naming DSP as a defendant in their lawsuit.  The balance of the averment is denied.

37.    Denied as alleged.  Admitted only that Mark Lewis was a Correctional Officer with the Delaware Department of Correction, and a member of the Governor's Task Force, at the time of the events alleged.  Any and all liability on the part of Mark Lewis is denied.

38.    The allegations of Constitutional violations and deprivations are denied.  The balance of the averment calls for a legal conclusion, and is therefore denied.

39.    The place and date of birth and parents' names are admitted.  The balance of the averment is denied.  Answering defendants are without knowledge as to Hale's service record.

40.    Admitted, upon information and belief.  By way of further answer, Plaintiff was previously married and divorced.

41.    Denied as alleged.  Admitted only that Hale was a member of the northern Virginia chapter of the Pagan Motorcycle Club.  The answering defendants are without knowledge or information as to Hale's motivation, other than profit from illegal drug distribution, for joining the Pagans.

42.    Decedent's age at the time of his death and his Virginia  residency are admitted.  Answering defendants are without knowledge as to Hale's actual residence and living arrangements at the time of his death.

43.    Denied as alleged.  Admitted only that Hale was a member of the Pagan Motorcycle Club in northern Virginia.  Further admitted that Hale established contacts with Pagans in Delaware for the purpose of dealing in illegal narcotic drugs and in weapons.  Hale was identified as an unindicted co-conspirator in an Indictment returned by the New Castle County

Grand Jury naming a total of thirty-two defendants in a drug racketeering operation that was investigated by the Delaware State Police.  The balance of the averment is denied.

44.    Denied as alleged   In 2005, the DSP SIU began to investigate ongoing drug transactions involving members of the Pagan Motorcycle Club in Delaware.  This undercover investigation was justified by the considerable quantities of illegal drugs, weapons, and cash involved.

45.    Denied.    The purpose of this legitimate law enforcement undercover investigation was to identify, arrest, prosecute, and incarcerate individuals involved in a conspiracy to distribute large quantities of weapons and illegal controlled substances in Delaware. The allegations as to the media are false.

46.    Denied.

47.    Denied as alleged.  Part of the investigation involved an inquiry into the backgrounds of various suspects through law enforcement channels and sources.  The focus of the investigation was on the activities of various individuals involved in the distribution of weapons and controlled substances.

48.    Denied as alleged.  The investigation revealed that Hale was acting as a courier for drugs, weapons and money between the Delaware Pagans and the northern Virginia Pagans.

49.    Denied.    By way of further answer, the investigation revealed Hale's involvement in the drug and organized crime conspiracy, as set forth in the Indictment listing him as a co-conspirator.

50.    Denied as to Colonel MacLeish, Major Homiak, and Major Papili.  Captain Coupe, Lt. Ogden and Sgt. Hunt had personal knowledge as well as information from other law enforcement sources regarding evidence  that Hale was engaged in criminal activity.

51.    Denied as alleged.  The defendants had knowledge of the facts set forth above, as well as other evidence implicating Hale in the drug conspiracy, that furnished probable cause for the detention and/or arrest of Hale.

52.     Denied as alleged.  Admitted by information and belief that some members of the Pagan club participated as alleged.  The defendants are without sufficient information or knowledge to respond to the balance of the averment.

53.     Denied.

54.     Denied as alleged.  Admitted only that, on November 6, 2006, Hale was observed at 1403 W. 6th Street, the home of Raul Morales, who was part of the Pagan criminal enterprise. 1403 W. 6th Street was the same  premises from which cocaine, handguns, and ammunition had been seized on Saturday, November 4, two days before.  Further admitted that Hale appeared to be removing items from the dwelling, in apparent preparation to leave Delaware.

55.     Denied as alleged.  Raul Morales, the former husband of Sandra Lopez, had been arrested on felony drug charges in conjunction with the search of the premises at 1403 W.  6th Street that yielded the cocaine, handguns, and ammunition.  Ms. Lopez was observed at the dwelling on November 6, 2006, along with two children and Hale.  Answering defendants are without knowledge or information as to Lopez' reasons for being on the premises.

56.     Answering defendants are without sufficient information or knowledge to respond to this averment.

57.     Answering defendants are without sufficient information or knowledge to respond to this averment.

58.     Denied as alleged.  Admitted only that Hale was wearing a black hooded sweatshirt with a single large pocket in front, and a bulky leather jacket underneath.  Hale was wearing his Pagan gang "colors" under the other layers of clothing.

59.     Answering defendants are without sufficient information or knowledge to respond to this averment.

60.     Answering defendants are without sufficient information or knowledge to respond to this averment.

61.     Answering defendants are without sufficient information or knowledge to respond to this averment.

62.     Answering defendants are without sufficient information or knowledge to respond to this averment.

63.     Answering defendants are without sufficient information or knowledge to respond to this averment.

64.     Answering defendants are without sufficient information or knowledge to respond to this averment.

65.     Answering defendants are without sufficient information or knowledge to respond to this averment.

66.     Denied as alleged.  Admitted only that DSP officers had been conducting electronic surveillance of Hale and other conspirators involved in drug and weapons distribution, under the authority of orders issued by the Hon. Richard R. Cooch of the Superior Court of Delaware.  Through their ongoing investigation, including electronic surveillance, the officers learned of Hale's role in the sale of illegal drugs in Delaware and Virginia, as well as his possession of weapons and the risk of violence.

67.     Denied as alleged.  Specifically denied that any DSP defendant conveyed any false information about Hale to WPD officers.

68.     Denied as alleged.  Admitted only that DSP officers had been conducting electronic surveillance of Hale and other conspirators involved in drug distribution, under the authority of orders issued by the Hon. Richard R. Cooch of the Superior Court of Delaware.  Monitored telephone conversations and other investigation revealed that Hale was a key player in the distribution and sale of illegal drugs, and that probable cause existed to arrest him on felony charges.  Based on the information gained, the officers believed that Hale was about to flee the State of Delaware to avoid arrest.

69.     Denied. By way of further response, monitored telephone conversations and other investigation revealed that Hale was a key player in the distribution and sale of illegal drugs. Based on the information gained, the officers believed that Hale was about to flee the State of Delaware to avoid arrest.

70.     Denied. By way of further response, all electronic surveillance was conducted pursuant to Delaware law and the Orders issued by Judge Cooch.

71.     Denied as alleged. A search warrant executed at the 1403 West Sixth Street address on November 4, 2006 yielded significant quantities of cocaine, weapons, and ammunition hidden within the dwelling. The dwelling was not secured after the search of the premises was completed, and the police did not maintain surveillance of the dwelling between Saturday and Monday. On November 6, 2006, the police did not know whether the dwelling contained weapons or controlled substances.

72.     Denied.

73.     Denied.

74.     Denied.

75.     Denied as alleged. WPD officers arrived at the scene in two undercover cars and an unmarked police car with emergency equipment. DSP officers approached the scene in two vehicles. The balance of the averment is denied.

76.     Denied. The WPD officers acted quickly and properly to protect civilians and to secure the location.

77.     Denied as alleged. Approximately six WPD officers approached Hale. Hale was the only target of the police action. One of the officers escorted a child away from the scene and remained with the child out of sight of the area where the police operation was under way. The officers wore vests with large "police" insignia and identified themselves as police officers. It was clearly apparent to Hale that this was a police operation. The balance of the averment is denied.

78.    Denied.  By way of further response, the officers verbally and loudly identified themselves as police officers, and were wearing protective vests with clearly visible police insignia, and  ordered Hale to show his hands.  The officers did not wear uniforms, but were clearly identified as police officers by their vests and/or badges and verbal identification.  Hale knew that they were police officers there to arrest him.

79.    Denied.  See response to averment #78, above.   The WPD officers who attempted to arrest Hale identified themselves as police officers, and this fact was readily apparent and known to Hale, who was also aware at the time that many of his co-conspirators had been arrested, and that search warrants had been executed and incriminating evidence seized at a number of locations associated with the drug operation, including the dwelling on whose steps he sat.   Specifically denied that any DSP Defendant had personal involvement with the attempt to physically take Hale into custody.

80.    Denied.  By way of further answer, the officers identified themselves as police.

81.    Denied.  Specifically denied that any DSP Defendant put any person in harm's way.

82.    Denied as alleged.   As the WPD officers approached Hale, they identified themselves as police officers, told him he was under arrest, and demanded repeatedly, and clearly, that he show his hands.  The balance of the averment is denied.

83.    Denied as alleged.  Admitted only that the WPD officers utilized an effective approach for the apprehension of dangerous individuals on felony charges where the risk of flight and officer safety issues are presented, and the individual refuses to cooperate.  Specifically denied that Defendants took any action to prevent Hale's compliance with their commands.

84.    Denied as alleged.  Admitted only that the WPD officers utilized an effective approach for the apprehension of dangerous individuals on felony charges where the risk of flight and officer safety issues are presented, and the individual refuses to cooperate.  Specifically denied that Defendants took any action to prevent Hale's compliance with their commands.  By

way of further response, any escalation of force was caused by Hale's resistance and non-compliance with the commands of officers to show his hands.

85.    Denied.  By way of further response, it was not safe to approach Hale when his hands were hidden from view in the front pocket of his sweatshirt, and he had defiantly refused to comply with the officers' commands to show his hands.  The intent of the WPD officers was to take custody of Hale without injury to him or the officers.  Any escalation of force was caused by Hale's resistance and non-compliance with the commands of officers to show his hands.

86.    Denied as alleged.  When Hale failed to comply with officers' directions, and after he was repeatedly ordered to show his hands and refused to do so, one of the WPD officers utilized the taser device in an attempt to  obtain his compliance with the officers' lawful directions.

87.    Denied.  By way of further response, Hale was resisting arrest and refused to comply with the officers' reasonable commands, and appeared defiant and menacing.

88.    Denied.  The use of the taser device was consistent with established procedures. Answering defendants are without knowledge as to WPD rules and regulations.

89.    Denied as alleged.  Admitted only that Hale was momentarily stunned by the taser.

90.    Denied.  Hale continued to hide both of his hands in the large front pocket of his sweatshirt, and was positioned up a steep set of steps.  It was not safe for the officers to approach Hale.  The balance of the averment is denied.

91.    Denied.  Following the actual tasering, Hale was no longer immobilized, and was able to comply with the officers' commands.  He also remained in a position to harm the officers.

92.    Denied as alleged.  When the taser is disconnected or deactivated, the subject will rapidly regain control, and will present an immediate risk to police officers.  The answering defendants are without knowledge as to WPD training.  DSP training emphasizes the risk of harm presented by an individual not immobilized by the taser.  At the time of the events alleged, DSP

did not employ tasers as a weapon.  It is specifically denied that any DSP defendant had any involvement in the tasering of Hale or the use of a taser by a WPD officer.

93.    Denied..  At no time were Ms. Lopez or the children in any danger whatsoever.

94.    Denied.

95.    Denied.

96.    Admitted, by information and belief.  It is specifically denied that any DSP defendant had any involvement in the tasering of Hale or the use of a taser by a WPD officer.

97.    Denied as alleged.    Following the actual tasering, Hale was no longer immobilized, and was able to comply with the officers' commands.  He also remained in a position to harm the officers.

98.    The answering defendants are without knowledge or information concerning WPD rules and regulations.  The allegation is denied as stated with respect to DSP rules and regulations.

99.    Denied.  Following the actual tasering, Hale was no longer immobilized, and was able to comply with the officers' commands.  Hale continued to hide both of his hands in the front pocket of his sweatshirt, and was positioned up a steep set of steps.  He was also in a position to harm the officers.

100.    Denied.   Specifically denied that any DSP defendant uttered the alleged remark.

101.    Denied as alleged.  Throughout the attempted arrest, the officers continued to command Hale to show his hands so that he might be safely taken into custody.    The balance of the averment is denied.

102.    Denied.   After each actual application of the taser, Hale was no longer immobilized, and was able to comply with the officers' commands, yet voluntarily and willfully refused to do so.

103.    Admitted, by information and belief, that the WPD officers attempted to taser Hale a third time.  At some point during the tasering sequence, Hale removed only one hand from

his sweatshirt pocket and removed at least one of the taser probes from his body and/or clothing. He then placed his hand back in the pocket. Hale never removed his other hand from his pocket at any time.

104.    Denied.

105.    Denied. After Hale removed the taser probe, the current was no longer running through his body. He regained his feet and stood with his hands hidden in his sweatshirt pocket, in a menacing manner. He was no longer immobilized. The WPD officers continued to yell commands for him to show his hands and give himself up, and Hale continued to refuse to comply. He stood facing them in a hostile manner, with his hands hidden in his front sweatshirt pocket. It was not safe for the officers to approach him.

106.    Denied.

107.    Denied.

108.    Denied, as to the answering defendants. The answering defendants are without knowledge or information as to what the WPD officers may have heard or seen. Denied that the on scene DSP defendants were "heavily armed."

109.    Denied.

110.    Denied, as to the answering defendants. The answering defendants are without knowledge or information as to what the WPD officers may have heard or seen.

111.    Denied as alleged. After Hale jumped up and faced the officers with his hands hidden in his front sweatshirt pocket and refused all commands to show his hands, three shots were fired by a WPD officer.

112.    The answering defendants are without knowledge or belief as to the WPD force standards. The averment is a misstatement of the DSP continuum of force, and is therefore denied as to answering defendants.

113.    Denied. By way of further answer, Lt. Ogden immediately requested an ambulance.

114.    Denied.

115.    Denied.

116.    Denied.

117.    Denied.  By way of further answer, no shots were fired at "point-blank" range, and Hale had regained his feet, continued to refuse to show his hands and continued to pose a threat to  the officers when he was shot.

118.    Denied.  By way of further answer, the WPD officers gave Hale repeated warnings to surrender and to show his hands and to drop his weapon.

119.    The answering defendants are without knowledge as to the belief of the WPD officers at the scene.  Denied as to the DSP officers.

120.    The answering defendants are without knowledge as to the focus of the WPD officers at the scene.  Admitted as to the DSP officers at the scene of the attempted arrest.

121.    Denied as alleged.  The use of a single weapon to defend the officers was consistent with training standards.

122.    The answering defendants are without knowledge as to the belief of the WPD officers at the scene.  Denied as to the DSP officers.

123.    Denied.

124.    Denied.  Admitted only that no DSP officer fired a weapon at any time.

125.    Denied.  By way of further answer, upon information and belief, the WPD officers knew that there was probable cause to arrest Hale on numerous felony counts, and that an arrest warrant was being prepared.

126.    Denied.

127.    Denied.  By way of further response, any escalation of force was caused by Hale's own conduct in resisting arrest and refusing commands to show his hands.

128.    Denied.

129.    Denied.

130.    Denied.  By way of further response, no DSP defendant played any part in directing the uses of force at the scene, nor was any WPD officer a "subordinate" of any DSP officer.   Denied that any DSP defendant acquiesced in or failed to intervene against any illegal activity.

131.    Denied.

132.    Denied.  By way of further answer, the circumstances of Hale's death were immediately and thoroughly investigated by WPD and by the State Department of Justice.

133.    Denied as alleged.  DSP officers involved in the drug and organized crime investigation had worked with Virginia authorities, particularly as to Hale's drug and weapons trafficking activities in Virginia.  The Virginia authorities were made aware of the evidence against Hale through electronic surveillance and other investigation.  The balance of the averment is denied.

134.    Denied. DSP officers provided Virginia authorities with facts establishing Hale's active role in drug distribution, including information contained in the arrest warrant affidavit prepared for Hale.  All information provided to Virginia authorities was true and accurate.

135.    Denied.

136.    Denied as alleged.  DSP officers advised the Virginia authorities that WPD had attempted to arrest Hale on drug charges, and that Hale had resisted arrest, and was killed.

137.    Denied as alleged.  DSP officers provided information to Virginia authorities which was subsequently used by Virginia authorities in obtaining a search warrant for the Virginia address used by Hale.

138.    Denied as alleged.  The Virginia authorities prepared an affidavit based in part on facts establishing Hale's role in the drug and organized crime conspiracy, and the issuing magistrate properly found that there was probable cause to search the address used by Hale in Virginia.

139. Denied as alleged. There were no false statements made by any DSP officer. The affidavit contained information provided by DSP officers as a result of their investigation of Hale, as well as information known to Virginia authorities about Hale.

140. Denied as alleged. The information provided by DSP officers and Virginia authorities established ample probable cause to search the address used by Hale in Virginia.

141. Denied.

142. Denied.

143. Denied.

144. Denied.

145. Denied.

146. The averment violates Rule 8(a)(2), which requires that pleadings set forth "a short and plain statement of the claim", Rule 8(e)(1), which requires that "[e]ach averment of a pleading shall be simple, concise, and direct", and Rule 10(b), which requires paragraphs limited to a statement of a single set of circumstances. Without prejudice to the foregoing objection, each and every allegation is denied.

147. Denied.

148. Denied.

149. Denied.

150. Denied.

151. This averment is not directed to the answering defendants. The answering defendants are without sufficient information or knowledge to respond.

152. This averment is not directed to the answering defendants. The answering defendants are without sufficient information or knowledge to respond.

153. This averment is not directed to the answering defendants. The answering defendants are without sufficient information or knowledge to respond.

154.    This averment is not directed to the answering defendants.    The answering defendants are without sufficient information or knowledge to respond.

155.    This averment is not directed to the answering defendants.    The answering defendants are without sufficient information or knowledge to respond.

156.    This averment is not directed to the answering defendants.    The answering defendants are without sufficient information or knowledge to respond.

157.    This averment is not directed to the answering defendants.    The answering defendants are without sufficient information or knowledge to respond.

158.    This averment is not directed to the answering defendants.    The answering defendants are without sufficient information or knowledge to respond.

159.    This averment is not directed to the answering defendants.    The answering defendants are without sufficient information or knowledge to respond.

160.    To the extent that this allegation is directed at the answering defendants, it is denied.

161.    To the extent that this allegation is directed at the answering defendants, it is denied.

162.    The allegation is incomprehensible.    To the extent that this allegation is directed at the answering defendants, it is denied.

163.    To the extent that this allegation is directed at the answering defendants, it is denied.

164.    Denied.

### [COUNT I]

165.    The answering defendants restate and incorporate herein by reference the responses set forth in the foregoing paragraphs.

166.    As this averment is directed at other defendants, no answer is required.    The facts alleged are denied by the answering defendants.

167.    As this averment is directed at other defendants, no answer is required.  The facts alleged are denied by the answering defendants.

168.    As this averment is directed at other defendants, no answer is required.  The facts alleged are denied by the answering defendants.

169.    As this averment is directed at other defendants, no answer is required.  The facts alleged are denied by the answering defendants.

170.    As this averment is directed at other defendants, no answer is required.  The facts alleged are denied by the answering defendants.

171.    As this averment is directed at other defendants, no answer is required.  The facts alleged are denied by the answering defendants.

172.    As this averment is directed at other defendants, no answer is required.  The facts alleged are denied by the answering defendants.

173.    As this averment is directed at other defendants, no answer is required.  The facts alleged are denied by the answering defendants.

**[COUNT II]**

174.    The answering defendants restate and incorporate herein by reference the responses set forth in the foregoing paragraphs.

175.    Denied.

176.    Denied.

177.    Denied.

178.    Denied.

179.    This averment is not directed to the answering defendants.  To the extent it is intended to refer to the answering defendants, it is denied.

180.    Denied.  By way of further answer, the DSP policies on the use of force do not apply to the apprehension of a suspect by WPD, which is an independent police agency.

181.    Denied.  By way of further answer, the DSP policies on the use of force do not apply to the apprehension of a suspect by WPD, which is an independent police agency.

182.    This averment is not directed to the answering defendants.  To the extent it is intended to refer to the answering defendants, it is denied.

183.    This averment is not directed to the answering defendants.  To the extent it is intended to refer to the answering defendants, it is denied.

184.    Denied.

## [COUNT III]

185.    The answering defendants restate and incorporate herein by reference the responses set forth in the foregoing paragraphs.

186.    Denied.

187.    Denied.  Admitted only that DSP initiated a lawful drug and organized crime investigation which ultimately implicated Hale and other members of the Pagan Motorcycle Club.

188.    Denied as alleged.  Admitted only that  DSP requested the assistance of WPD with regard to arrests and search warrants within jurisdiction of WPD in the City of Wilmington. When Hale surfaced in Wilmington on Monday, DSP officers requested the assistance of WPD to apprehend him before he had a chance to flee.  The balance of the averment is denied.

189.    Denied.  DSP provided WPD with information from monitored telephone calls regarding Hale's role in the drug and organized crime conspiracy, including the likelihood that he would be armed and hostile, as well as a flight risk.

190.    Denied as alleged.  Hale was not under visual surveillance, and his whereabouts were unknown to DSP until he surfaced on Monday afternoon.  DSP monitored a phone call at approximately 1:00 p.m. on Monday, during which Hale revealed that he was at the West Sixth Street location.  DSP officers then began preparing an arrest warrant for Hale and a search warrant for the premises.  There was ample probable cause from the drug and organized crime

investigation to arrest Hale, and the warrantless arrest was justified in light potential felony charges and exigent circumstances, namely Hale's impending flight from the State.

191.    Denied.

192.    Denied as alleged.  The officers who attempted to arrest Hale were from the WPD drug unit and the SWAT team under the sole command of WPD officers.  No DSP officers took part in the attempt to apprehend Hale, except as observers.  The DSP investigators provided the WPD officers with information which constituted grounds to arrest Hale without a warrant.

193.    Denied.

## [COUNT IV]

194.    The answering defendants restate and incorporate herein by reference the responses set forth in the foregoing paragraphs.

195.    Denied.  Admitted only that DSP investigators communicated to the Virginia authorities facts establishing Hale's significant role in the drug and organized crime conspiracy, including Hale's possession of controlled substances, weapons, and cash used in drug transactions.  The Virginia court properly determined that probable cause existed to search the Virginia address utilized by Hale.

196.    Denied.

197.    Denied.

198.    Denied.

## [COUNT V]

199.    Answering defendants restate and incorporate herein by reference the responses set forth in the foregoing paragraphs.

200.    Denied.

**[COUNT VI]**

201.     Answering defendants restate and incorporate herein by reference the responses set forth in the foregoing paragraphs.

202.     The allegation is incomprehensible.  To the extent it is directed at answering defendants, it is denied.  By way of further answer, Hale knew that the police officers were there to arrest him.

203.     Denied.

204.     Denied.

**[COUNT VII]**

205.     Answering defendants restate and incorporate herein by reference the responses set forth in the foregoing paragraphs.

206.     Denied.

207.     Denied.

208.     Denied.

209.     Denied.

210.     Denied.

211.     Denied.

**[COUNT VIII]**

212.     Answering defendants restate and incorporate herein by reference the responses set forth in the foregoing paragraphs.

213.     Denied as alleged.  By way of further response, in 2005, DSP instituted a lawful undercover investigation into ongoing drug and weapon transactions involving members of the Pagan Motorcycle Club.  The purpose of this investigation was to identify, arrest, prosecute, and incarcerate individuals involved in a conspiracy to distribute large quantities of illegal controlled substances in Delaware.  As the investigation progressed, it revealed that Hale was acting as a

courier for drugs, weapons and money between the Delaware Pagans and the northern Virginia Pagans.

214.    Denied as alleged.    Admitted only that DSP officials transmitted accurate information as to Hale to assist WPD in making the arrest within their jurisdiction.

215.    Denied.

## Affirmative Defenses

1.    The plaintiffs fail to state a claim against the Delaware State Police defendants upon which relief can be granted by the Court, and the Second Amended Complaint should therefore be dismissed, pursuant to Rule 12(b)(6).

2.    All claims against the Delaware State Police, Department of Safety and Homeland Security, State of Delaware, and DSP officers in their official capacity, are barred by sovereign immunity under the Eleventh Amendment to the United States Constitution.

3.    All claims asserted against individual Delaware State Police officers are barred by the doctrine of qualified immunity.

4.    The Second Amended Complaint fails to state a cause of action against any of the Delaware State Police defendants under 42 U.S.C. §1983.

5.    The Second Amended Complaint fails to state a cause of action against any of the Delaware State Police defendants for alleged "conspiracy".

6.    The Second Amended Complaint fails to state a claim against the Delaware State Police defendants for alleged violations of the Constitution of the State of Delaware.

7.    The Second Amended Complaint fails to state a claim against the Delaware State Police defendants for an alleged "assault and battery".

8.    The Second Amended Complaint fails to state a claim against the Delaware State Police defendants for wrongful death.

9.      As to any claims sounding in state law, the State defendants are immune from liability under the State Tort Claims Act, 10 *Del.C.* §4001, *et. seq.*

10.      The Second Amended Complaint fails to state a claim against individual State defendants, who cannot be held liable in the absence of personal involvement for alleged constitutional deprivations.

11.      To the extent the Plaintiff seeks to hold the State defendants liable based on supervisory responsibilities, the Doctrine of *respondeat superior* is not a basis for liability in an action under 42 U.S.C.A. §1983.

12.      To the extent Plaintiff's claims sound in negligence, Plaintiffs fails to state a cause of action under 42 U.S.C.A. §1983.

13.      Plaintiffs fail to state a claim for failure to train or maintenance of wrongful customs, practices and policies against the State or any State Defendant.

14.      Decedent contributed to his own injuries and death by his conduct in resisting arrest and failing to obey the lawful commands of police officers, proximately causing and/or exacerbating his injuries.

15.      Decedent's injuries and death resulted from intervening/superseding causes, including, but not limited to, his conduct in resisting arrest and failing to obey the lawful commands of police officers.

WHEREFORE, the answering State Defendants respectfully request that all claims in the Second Amended Complaint directed at said defendants be dismissed as to them, with prejudice, and with all costs and fees payable by the plaintiffs.

STATE OF DELAWARE
DEPARTMENT OF JUSTICE

/s/ Stephani J. Ballard
Stephani J. Ballard, #3481
Deputy Attorney General
Carvel State Building
820 N. French Street, 6th Floor
Wilmington, DE  19801
(302) 577-8400
Attorney for DSP Defendants

Date:  April 30, 2008

## IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ELAINE HALE, Individually and as | ) | |
| Administratrix of the Estate of Derek J. Hale | ) | |
| DENNIS W. HALE, and CONNIE M. HALE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 07-166 GMS |
| | ) | |
| Lieutenant WILLIAM BROWNE; Sgt. | ) | |
| ANGEL ALVERIO, Cpl. Hector Cuadrado; | ) | |
| Cpl. ROBERT CUNNINGHAM, | ) | |
| Cpl. CHARLES EMORY, JR., Cpl. MITCHELL | ) | |
| RENTZ, Cpl. JEFFREY SILVERS, Cpl. GEORGE | ) | |
| TAYLOR, Cpl. JOSEPH LEARY, | ) | |
| Cpl. RANDOLPH PFAFF, Cpl. DANNY SILVA, | ) | |
| Chief MICHAEL J. SZCZERBA, | ) | |
| in his official capacity; CITY OF | ) | |
| WILMINGTON, a municipal corporation; | ) | |
| Lieutenant PATRICK OGDEN; Sergeant | ) | |
| RANDALL HUNT; Detective VINCENT | ) | |
| CLEMONS; Detective DAVID CHORLTON; | ) | |
| Major ALBERT HOMIAK; Major JOSEPH PAPILI; | ) | |
| Colonel THOMAS F. MacLEISH, individually | ) | |
| and in his official capacity; | ) | |
| Captain ROBERT COUPE;Corporal CHRIS POPP; | ) | |
| DIVISION OF STATE POLICE, | ) | |
| DEPARTMENT OF SAFETY AND HOMELAND | ) | |
| SECURITY, STATE OF DELAWARE; | ) | |
| MARK LEWIS, Delaware Department of Correction | ) | |
| | ) | |
| Defendants. | ) | |

### CERTIFICATE OF MAILING AND/OR DELIVERY

The undersigned certifies that on **April 30, 2008**, she caused the attached *Answer of State Defendants: Patrick Ogden, Randall Hunt, Vincent Clemons, David Chorlton, Robert Coupe, Chris Popp, Mark Lewis, Albert Homiak, Joseph Papili, Thomas F. MacLeish, and the Delaware State Police to the Second Amended Complaint* to be electronically filed with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

| | |
|---|---|
| Thomas S. Neuberger, Esquire | Robert Jacobs, Esquire |
| Stephen J. Neuberger, Esquire | Thomas C. Crumplar, Esquire |
| The Neuberger Firm, P.A. | Jacob & Crumpler, P.A. |
| Two East Seventh Street, Suite 302 | Two East Seventh Street, Suite 400 |
| Wilmington, DE 19801 | Wilmington, DE 19801 |
| | |
| John A. Parkins, Jr., Esquire | John W. Whitehead, Esquire |
| Richards, Layton & Finger | Douglas McKusick, Esquire |
| One Rodney Square | The Rutherford Institute |
| 920 N. King Street | P.O. Box 7482 |
| Wilmington, DE 19801 | Charlottesville, Virginia 22906 |

Randal Shaheen, Esquire
Ryan Richardson, Esquire
Jennifer Risen, Esquire
Arnold & Porter L.L.P.
555 12th Street, NW
Washington, DC  20004

**STATE OF DELAWARE**
**DEPARTMENT OF JUSTICE**

<u>/s/  Stephani J. Ballard</u>
Stephani J. Ballard, #3481
Deputy Attorney General
Carvel State Building
820 N. French Street, 6th Floor
Wilmington, DE  19801
(302) 577-8400
Attorney for DSP Defendants